UNITED STATES of America,
Plaintiff, Appellee,

v.

ALKY ENTERPRISES, INC.,
Defendant, Appellant.

No. 91–2021.

United States Court of Appeals,
First Circuit.

Heard March 4, 1992.
Decided July 20, 1992.

Russell F. Hilliard with whom Upton, Sanders & Smith, Concord, N.H., was on brief for defendant, appellant.

Gretchen Leah Witt, Chief, Civil Div., U.S. Atty.'s Office, with whom Jeffrey R. Howard, U.S. Atty., Concord, N.H., was on brief for the U.S.

Before TORRUELLA, Circuit Judge, CAMPBELL and BOWNES, Senior Circuit Judges.

LEVIN H. CAMPBELL, Senior Circuit Judge.

This appeal requires determination of whether there is privity between the Interstate Commerce Commission (the "ICC") and the United States in the enforcement of the Interstate Commerce Act, so that a prior injunctive action by the ICC was *res judicata* as to the United States' later action for civil penalties. The district court found no privity between the ICC and the United States. It held, therefore, that the

doctrine of *res judicata* did not bar the Attorney General's subsequent action to impose civil penalties. We affirm.

I.

Defendant-appellant Alky Enterprises Inc., ("Alky"), is a New Hampshire corporation engaged in the business of transporting regulated commodities in interstate commerce. On November 2, 1989, the ICC filed a complaint in United States District Court for the District of New Hampshire alleging that Alky had violated the Interstate Commerce Act (the "Act") by operating in interstate commerce without operating authority and insurance coverage in violation of 49 U.S.C. §§ 10921 and 10927.[1] *See Interstate Commerce Commission v. Alky Enterprises, Inc.*, Civ. No. 89–504–D (D.N.H. filed Nov. 2, 1989) ("*Alky I*"). The ICC sought a permanent injunction enjoining Alky from further operation in interstate commerce without operating authority and insurance coverage. On January 2, 1990, the district court granted a permanent injunction enjoining Alky from operating in interstate or foreign commerce unless and until the ICC issued the necessary operating authority and Alky obtained the required insurance coverage. Final judgment in *Alky I* was entered on January 4, 1990.

On November 9, 1989, prior to the entry of final judgement in *Alky I*, the ICC wrote Alky a letter claiming $51,000.00 in civil penalties pursuant to the Interstate Commerce Act, 49 U.S.C. § 11901(g).[2] The let-

---

**1.** 49 U.S.C. § 10921 provides:

Except as provided in this subchapter or another law, a person may provide transportation or service subject to the jurisdiction of the Interstate Commerce Commission under subchapter II, III, or IV of chapter 105 of this title or be a broker for transportation subject to the jurisdiction of the Commission under subchapter II of that chapter, only if the person holds the appropriate certificate, permit, or license issued under this subchapter authorizing the transportation or service.

49 U.S.C. § 10927(a)(1) provides in pertinent part:

The Commission may issue a certificate ... or a permit ... only if the carrier ... applying for such certificate files with the Commission

a bond, insurance policy, or other type of security approved by the Commission.... A certificate or permit remains in effect only as long as the carrier satisfies the requirements of this paragraph.

**2.** 49 U.S.C. § 11901(g) provides in pertinent part:

A person required to make a report to the Commission answer a question, or make, prepare, or preserve a record under this subtitle concerning transportation subject to the jurisdiction of the Commission ... or an officer, agent, or employee of that person that ... (4) does not comply with section 10921 of this title, ... is liable to the United States Government for a civil penalty of not more than $500 for each violation and for not more than $250

ter, from the ICC's Senior Trial Attorney, Stuart B. Robbins, notified Alky that "civil forfeiture claims against your company are hereby made by the Interstate Commerce Commission ... under the provisions of the Interstate Commerce Act and the Federal Claims Collection Act (49 U.S.C. § 11901, 31 U.S.C. § 952, and 49 C.F.R. § 1021.4)." The letter also stated that "[u]nder the regulations adopted by the Commission (49 C.F.R. § 1021.10) ... if there is a prolonged or repeated failure to settle these claims, consideration will be given to referring this matter to the U.S. Attorney's Office ... for the institution of court action for collection of the above claims." According to Robbins' sworn declaration, he advised Alky on November 14, 1989 and again on January 9, 1990, that the ICC was "offering to settle the claims upon the payment of $20,000.00." On February 2, 1990, Alky's president requested a list of the violations. Robbins provided the list on February 6, 1990 and requested that Alky advise him of its position on the settlement of the outstanding claims by no later than February 16, 1990 and that, without settlement, the ICC would refer the case to the Department of Justice for institution of a civil action.

Settlement never occurred. On September 14, 1990, the ICC referred the case to the U.S. Attorney General for the District of New Hampshire. On October 31, 1990, the United States instituted the present action ("*Alky II*"), seeking $51,500.00 in civil penalties from Alky for the same violations of the Interstate Commerce Act that were the basis of the ICC's request for an injunction in *Alky I*.[3] In its answer, Alky did not contest the United States' factual allegations. Instead, it merely denied generally having violated the Interstate Commerce Act, and raised the affirmative defense of *res judicata*, asserting that the United States' action for civil penalties was barred because of the ICC's prior injunctive action in *Alky I*. Alky moved for summary judgment on the ground that

for each additional day the violation continues....

*res judicata* barred maintenance of *Alky II*. The United States then filed a motion for summary judgment on the basis that Alky did not contest the factual allegations underlying the complaint and that it was entitled to judgment as a matter of law.

The district court denied Alky's motion for summary judgment, holding that *Alky I* was not *res judicata* as to the United States' action for civil penalties. The court then granted the United States' motion for summary judgment on the grounds that the United States was, as a matter of law, entitled to collect $51,500.00 in civil penalties from Alky. This appeal followed.

II.

■ Alky's sole contention on appeal is that the district court erred in holding that *Alky I* was not *res judicata* as to *Alky II*. The doctrine of *res judicata* bars all parties and their privies from relitigating issues which were raised or *could have been raised* in a previous action, once a court has entered a final judgment on the merits of the previous action. *Manego v. Orleans Board of Trade*, 773 F.2d 1, 5 (1st Cir. 1985), *cert. denied*, 475 U.S. 1084, 106 S.Ct. 1466, 89 L.Ed.2d 722 (1986). There are three essential elements to a claim of *res judicata:* (1) a final judgment on the merits in an earlier action; (2) an identity of the cause of action in both the earlier and later suits; and (3) an identity of parties or privies in the two suits. *Kale v. Combined Ins. Co.*, 924 F.2d 1161, 1165 (1st Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 69, 116 L.Ed.2d 44 (1991) (citations omitted). The district court found that *Alky I* did not have *res judicata* effect on *Alky II* because there was insufficient identity between the ICC and the United States.

On appeal Alky contends that the ICC and the Attorney General were privies and that, therefore, the United States was barred from bringing a subsequent damages action arising from the same circumstances that had led the ICC to seek and

3. The $51,500.00 sought by the United States represented the statutory maximum penalty of $500.00 for each of the 103 violations documented in the civil penalty complaint.

obtain an injunction in *Alky I*. The United States maintains—as the district court held—that it was not in privity with the ICC and that, therefore, its action is not now barred.

In *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 60 S.Ct. 907, 84 L.Ed. 1263 (1940), the Supreme Court stated as a general rule that,

> [t]here is privity between officers of the same government so that a judgment in a suit between a party and a representative of the United States is *res judicata* in relitigation of the same issue between that party and another officer of the government. . . .

*Sunshine Anthracite Coal Co.*, 310 U.S. at 402–03, 60 S.Ct. at 916–17. The Court went on to say, however, that "[t]he crucial point is whether or not in the earlier litigation the representative of the United States had authority to represent its interests in a final adjudication of the issue in controversy." *Id.* at 403, 60 S.Ct. at 917. Applying this rule to these facts, we must decide whether in *Alky I* the ICC also "had authority to represent" the United States' interest in the collection of civil penalties for violations of the Interstate Commerce Act. To resolve this question we first consider the scope of the ICC's enforcement authority under the Interstate Commerce Act. Then, we ask whether the ICC's enforcement authority was broad enough not only to have maintained an injunctive suit as in *Alky I*, but to have sued to recover for the United States the statutory penalties authorized for the same violations which were the subject of the injunctive suit.

### III.

A. *The Scope of the ICC's Enforcement Powers*

■ At the time of both *Alky I* and *Alky II*, the ICC's enforcement powers were as currently set out in the Interstate Commerce Act at 49 U.S.C. § 11702(a). This section, in relevant part, authorizes the ICC to bring a civil action—

> (4) to enforce this subtitle . . ., or a regulation or order of the Commission or a certificate or permit issued under this subtitle when violated by a motor carrier or broker providing transportation subject to the jurisdiction of the Commission under subchapter II of chapter 105 of this title or by a foreign motor carrier or foreign motor private carrier providing transportation under a certificate of registration issued under section 10530 of this title: . . . .

49 U.S.C. § 11702(a)(4). The Interstate Commerce Act also provides for enforcement by the Attorney General. Specifically,

> [t]he Attorney General may, and on request of the Interstate Commerce Commission shall, bring court proceedings to enforce this subtitle or a regulation or order of the Commission or certificate or permit issued under this subtitle and to prosecute a person violating this subtitle or a regulation or order of the Commission or certificate or permit issued under this subtitle.

49 U.S.C. § 11703(a). As the district court and the United States acknowledge, there is little in these two provisions standing alone to suggest much difference between the scope of the enforcement authority granted to the ICC and that given to the Attorney General. The legislative history, however, indicates that, over the years, the ICC's enforcement role in court has been limited to seeking injunctive relief, leaving to the Attorney General actions to recover civil monetary penalties. The difference in roles was made clear in the language of the pre–1978 version of the Act, 49 U.S.C. §§ 322(b) and 322(h) (repealed 1978).[4]

---

**4.** 49 U.S.C. § 322(b) provided in pertinent part: If any motor carrier or broker operates in violation of any provision of this chapter . . . or any rule, regulation, requirement or order thereunder, or of any term or condition of any certificate or permit, the Commission or its duly authorized agent may apply to the district court of the United States . . . for the enforcement of such provision of this chapter, or of such rule, regulation, requirement, order, term or condition; and such court shall have jurisdiction to enforce obedience thereto *by a writ of injunction* or by other process, mandatory or otherwise, *restraining* such

The legislative history also makes clear that Congress intended no substantive changes when it revised and recodified the Interstate Commerce Act in 1978. Pub.L. No. 95–473, § 3a, 92 Stat. 1337 (Oct. 17, 1978), *reprinted in* 1978 *U.S.Code, Cong. & Admin.News* 3009. The House Report[5] accompanying the revisions to the Act stated that "the purpose of the bill is to restate in comprehensive form, without substantive change, the Interstate Commerce Act" and that "most of the amendments to the bill are of a clerical, typographical and stylistic nature." House Report "Judiciary Committee" No. 95–1395, July 26, 1978. Section 3(a) of the recodified Act itself provides that "[s]ections 1 and 2 of this Act restate, without substantive change, laws enacted before May 16, 1978, that were replaced by those sections. These sections may not be construed as making a substantive change in the laws replaced." Pub.L. No. 95–473, 92 Stat. 1337 (enacted Oct. 17, 1978). Both the District of Columbia Circuit and the Seventh Circuit have interpreted this language as mandating that courts look to the pre–1978 version of the Act in order to correctly interpret the recodified statute. *See Atchison, Topeka and Santa Fe Railway Co. v. United States*, 617 F.2d 485, 490 (7th Cir.1980) (" '[t]his prohibition against a constructive change in the recodified Act will require this court to examine closely the language of the IC Act prior to recodification in order to determine the intent of Congress.' " (quoting *Trailer Marine Transport Corp. v. Federal Maritime Commission*, 602 F.2d 379, 383 n. 18 (D.C.Cir.1979))).

Citing to this history, the district court below construed the present less informative provisions of the Interstate Commerce Act as nonetheless carrying forward the historical limitation on the ICC's right to sue in federal court for civil penalties. Only the Attorney General could, in the court's view, have brought *Alky II*. *United States v. Alky Enterprises, Inc.*, Civ. No. 99–498–s, at 5–6 (D.N.H. filed Aug. 16, 1991) ("[t]hough the Interstate Commerce Act, in its present incarnation does not so indicate, it appears that the ICC does not have the authority to initiate a suit for civil damages under its own name. Rather, such a suit is initiated by the Justice Department.").

We agree with the district court's determinations in this regard, although in so doing we find it helpful to note an additional factor beyond the legislative history, namely the language of present 49 U.S.C. § 11901(g)(4). This provision authorizes the collection of civil penalties for violations such as Alky's. It states that a person covered under the statute who "does not comply with section 10921 of this title ... is liable *to the United States Government* for a civil penalty of not more than $500 for each violation...." (Emphasis supplied). Because the civil penalty liability runs expressly "to the United States Government," there is a strong implication that enforcement of the liability is a matter placed exclusively in the hands of the Attorney General. Generally, unless the law expressly states otherwise, the Attorney General alone has plenary power to con-

carrier or broker, his or its officers, agents employees, and representatives from further violation of such provision of this chapter or of such rule, regulation, requirement, order, term or condition and *enjoining* upon it or them obedience thereto.
(repealed 1978) (emphasis supplied). 49 U.S.C. § 322(h) provided in pertinent part:
Any motor carrier ... or any officer, agent employee, or representative thereof, ... who shall fail or refuse to comply with any requirement of this chapter with respect to filing with this Commission ... any annual, periodical, or special report, or any other report, ... document, or data, or with any rule, order, or regulation prescribed with respect to such filing; ... *shall forfeit to the United*

*States* the sum of $100 for each such offense, and in case of a continuing violation, not to exceed $50 for each additional day during which such failure or refusal shall continue. All forfeitures provided for in this subsection shall be payable to the Treasury of the United States, and *shall be recoverable in a civil suit in the name of the United States....*
\* \* \* \* \* \*
It shall be the duty of the various United States attorneys under the direction of the Attorney General of the United States to prosecute for the recovery of such forfeitures. (repealed 1978) (emphasis supplied).

**5.** There was no Senate Report accompanying the Bill.

duct litigation in which the United States has an interest. 28 U.S.C. §§ 516 & 519;[6] *see also Federal Deposit Insurance Corp. v. Irwin,* 727 F.Supp. 1073, 1074 (N.D.Tex. 1989) *aff'd* 916 F.2d 1051 (5th Cir.1990) ("the Attorney General is the chief legal officer of the United States and absent express congressional directive to the contrary he is vested with plenary power over all litigation to which the United States or one of its agencies is a party."). Unless, therefore, Congress has elsewhere given "an express directive" to the ICC to enforce this liability "to the United States Government," only the Attorney General may do so.

Looking at the plain language of the Interstate Commerce Act's enforcement provisions, we cannot say that there is any "express" or otherwise clear directive authorizing the ICC to bring an action in place of the Attorney General to collect civil penalties owed to the United States Government. The enforcement provisions of the Act merely confer general authority upon the ICC to bring a civil action *"to enforce* this subtitle ... or a regulation or order of the Commission...."  49 U.S.C. § 11702(a)(4) (emphasis supplied). They do not expressly empower the ICC, acting for the United States, to collect in court a liability owing to the United States. At best, the question of the ICC's enforcement power relative to civil penalties, which are a liability to the United States Government, is uncertain under the current statute. Where the language of a statute is ambiguous on its face, we should look, as did the court below, to the legislative history in order to ascertain congressional intent. Upon consulting the legislative history here, it is clear, as discussed above, that Congress intended to make no substantive changes in the 1978 statute, and, therefore, intended to preserve the previous dichoto-

my under which the ICC undertook to secure injunctive relief in court, but the Attorney General alone could bring civil actions seeking monetary penalties.

We accordingly agree with the district court that the ICC could not, on its own, have commenced an action for civil penalties such as was instituted by the Attorney General in *Alky II.*

**B.  Res Judicata**

■ Having determined that the Interstate Commerce Act does not vest the ICC with authority to bring an action for civil penalties arising from violations of 49 U.S.C. § 10921, we turn to whether the ICC's injunctive action in *Alky I* had *res judicata* effect on the United States action for civil penalties in *Alky II.* We hold that it does not.

As we discussed, *supra,* the doctrine of *res judicata* bars all parties and their privies from relitigating issues which were raised or could have been raised in a previous action that has come to final judgment. *Manego,* 773 F.2d at 5. Privity exists between representatives of the United States if, in the earlier litigation, the representative has authority "to represent [the United States'] interests in a final adjudication of the issue in controversy." *Sunshine Anthracite Coal Co.,* 310 U.S. at 403, 60 S.Ct. at 917. The issue in controversy here is the collection of the civil penalties Congress has authorized against violators of the Act. Clearly, the ICC was authorized to represent the federal government's interest in enjoining violations of the Act and it did so in *Alky I.* The question then, is whether, in *Alky I,* the ICC also could have represented the United States' interest in collecting civil penalties. Because the ICC did not have statutory authority to represent the United States' interest in collect-

---

**6.**  28 U.S.C. § 516 provides:

Except as otherwise authorized by law, the conduct of the litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefor, is reserved to officers of the Department of Justice, under the direction of the Attorney General.

28 U.S.C. § 519 provides:

Except as otherwise authorized by law, the Attorney General shall supervise all litigation to which the United States, an agency, or officer thereof is a party, and shall direct all United States attorneys, assistant United States attorneys, and special attorneys appointed under section 543 of this title in the discharge of their respective duties.

ing civil penalties, we hold that, for purposes of the present case, the ICC and the United States were not in privity. *Alky I*, therefore, was not a *res judicata* bar to *Alky II* despite the fact that both actions pertained to the same violations.

Alky argues that even if the ICC did not have statutory authority to bring an action for civil penalties in its own name, it still had authority to represent the United States' interests in civil penalties because pursuant to section 11703, the Attorney General must bring an action for civil penalties on request of the ICC. 49 U.S.C. § 11703. Because the ICC had the authority to direct the actions to be taken against violators, Alky contends that where the ICC chose only to seek an injunction, it should be barred from a subsequent effort to collect civil penalties through referral to the Attorney General. We find this argument unpersuasive. While it is true that the ICC might earlier have caused the Attorney General to seek civil penalties from Alky, the ICC could not direct or supervise the civil action. *See* 28 U.S.C. § 519 ("[e]xcept as otherwise authorized by law, the Attorney General shall supervise all litigation in which the United States ... is a party...."). To force the ICC to wait for the Attorney General before seeking injunctive relief for clear violations of the Act would severely restrict the ICC's independent authority under the Act. There is no indication that Congress intended to so limit the ICC's authority. The relevant *res judicata* inquiry, therefore, is whether in the suit for injunction, the ICC itself—as the named party—could have represented the United States' interest in civil penalties. As the ICC could not have done so, a subsequent action by the Attorney General seeking to collect civil penalties is not barred.

*Affirmed. Costs in favor of appellee.*