[No. A067126. First Dist., Div. Four. Feb. 22, 1996.]

FRED ABDALLAH et al., Plaintiffs and Appellants, v.
UNITED SAVINGS BANK et al., Defendants and Respondents.

1102

**COUNSEL**

Richard E. Roby for Plaintiffs and Appellants.

Christopher Lee, Janina M. Elder, Adleson, Hess, Christensen & Kelly, Adleson, Hess & Kelly, Patric J. Kelly and Duane W. Shewaga for Defendants and Respondents.

**OPINION**

**HANLON, J.**—Appellants Fred Abdallah, Soloman Abdallah and Alice Ovadia appeal from judgments of dismissal in favor of respondents United Savings Bank, Sharon Keane and Standard Trust Deed Service after respondents' demurrers to appellants' complaint were sustained without leave to amend, and from postjudgment orders requiring appellants to pay respondents' attorney fees. We affirm the judgments and the fee orders.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On August 19, 1980, appellants Soloman Abdallah and Alice Ovadia, and Ms. Ovadia's late husband, Abraham Ovadia, executed a promissory note in favor of United for $79,650, secured by a deed of trust on their property at 101 Wool Street in San Francisco. In 1989, after defaulting on the note, the Ovadias commenced three bankruptcy cases which forestalled foreclosure under the deed of trust. The first two cases were dismissed for failure to file plans and other documents required by the Bankruptcy Code. In December 1989, shortly after Ms. Ovadia filed a third bankruptcy petition that affected the property, United moved for relief from the automatic stay to proceed with the foreclosure.

The motion was supported by the declaration of respondent Keane, a United officer, stating that the note was over $27,000 in arrears, representing 21 delinquent monthly payments plus various fees. An amended notice of the motion was served on Ms. Ovadia on December 14, 1989, and the motion was heard in bankruptcy court on December 20. Ms. Ovadia appeared at the hearing along with her son, appellant Fred Abdallah.

Fred Abdallah asserted that United's declaration contained "fraudulent statements," and that United had "harassed and intimidated" Ms. Ovadia

because she did not speak English. However, he had no proof of any payments on the note for which United had not accounted, and he made no affirmative response when the court asked him whether any such proof would be forthcoming. After listening to Fred Abdallah, and remarking that the Ovadias had "very much . . . abuse[d]" the bankruptcy process, the court granted relief from the stay.

The written order terminating the automatic stay was filed in the bankruptcy court on December 20. The order stated that United could proceed immediately with the foreclosure, "notwithstanding section 2924g of the California Civil Code." The property was sold under the deed of trust on December 21, the day after the bankruptcy court hearing, to Kland Company, Inc., for $138,200. The order terminating the automatic stay was not entered in the bankruptcy court's docket until December 28.

Fred Abdallah has stated that, "almost immediately" after the sale, he sought legal counsel to pursue any claims appellants might have had against United, Standard or Kland in connection with the foreclosure. Until Fred Abdallah met appellants' present counsel in June of 1993, every attorney he consulted on the matter advised him that appellants had no recourse.

In December 1992, appellants in propria persona sued United, Standard and Kland in federal court. Appellants' counsel filed an amended complaint on their behalf in the federal action in June of 1993, seeking to set aside the trustee's sale, and asserting causes of action against United, Standard, and Kland for fraud, breach of contract, conspiracy, and a Racketeer Influenced and Corrupt Organizations Act (RICO) violation. The federal case was dismissed on December 15, 1993.

The district court dismissed the RICO claim with prejudice, on the ground that appellants had effectively admitted they could not satisfy the racketeering element of the claim, and dismissed the other claims without prejudice. The court granted United's request for sanctions against appellants' counsel, based inter alia on counsel's statements at the hearing on the motion to dismiss, which the court interpreted as a concession that the RICO claim was added "to increase settlement leverage without a good faith basis for the claim." Appellants have appealed to the Ninth Circuit from the order dismissing their RICO claim, and their counsel has appealed to the Ninth Circuit from the order for sanctions.

Appellants commenced their action against respondents herein on December 15, 1993. Their first amended complaint filed on April 11, 1994, included causes of action for fraud, breach of contract, conspiracy, and a

RICO violation. The complaint alleged that Fred Abdallah owned a legal and equitable interest in the property at issue, and that he had acted as appellants' agent in dealing with respondents. The complaint prayed for attorney fees in connection with the fraud, breach of contract and RICO causes of action. Respondents filed demurrers to the first amended complaint in May of 1994.

Standard's demurrer was sustained without leave to amend on June 24, 1994, and a judgment dismissing Standard was filed on July 5, 1994. On July 14, 1994, the court filed an order sustaining United and Keane's demurrer to the fraud and RICO causes of action without leave to amend, sustaining their demurrer to the breach of contract cause of action with leave to amend, and overruling their demurrer to the conspiracy cause of action. Appellants filed a second amended complaint against United and Keane on July 26, 1994.

On August 12, 1994, the court ordered appellants to pay Standard's attorney fees in the sum of $11,278.10. On September 20, 1994, the court sustained United and Keane's demurrer to the second amended complaint without leave to amend, and a judgment in their favor was filed on October 4, 1994. On October 28, 1994, appellants were ordered to pay United and Keane's attorney fees in the amount of $24,225.

## II. Discussion

### A. *Judgments of Dismissal*

Appellants' many arguments with respect to the dismissals of their case fall into four categories: (1) claims that United and Keane acted improperly in connection with United's motion for relief from the automatic stay in the bankruptcy court; (2) claims that the property was improperly sold in violation of the automatic stay; (3) claims that Standard acted improperly, apart from violating the stay, in connection with the foreclosure and distribution of the sale proceeds; and (4) claims relating to the RICO cause of action. Each set of arguments will be dealt with in turn.

The allegations of impropriety associated with United's motion for relief from the stay include claims that United failed to properly account for payments under the note, and that Keane's declaration in support of the motion was otherwise fraudulent. ▮ Appellants also assert that United violated rules of procedure governing the motion, including rules requiring advance notice of the specific relief sought, and submission of a proposed order on the motion. However, all of these claims could have been raised in

the proceedings on the motion. Accordingly, they are barred under the doctrine of res judicata by the order on the motion, which was not appealed, and was not modified or set aside in the bankruptcy court. (See *Levy* v. *Cohen* (1977) 19 Cal.3d 165, 172 [137 Cal.Rptr. 162, 561 P.2d 252] [such orders are final for purposes of res judicata]; *Estate of Hilton* (1988) 199 Cal.App.3d 1145, 1168 [245 Cal.Rptr. 491] [federal order has same effect in California court as it would have in federal court]; *United States* v. *Alky Enterprises, Inc.* (1st Cir. 1992) 969 F.2d 1309, 1314 [res judicata bars relitigation of issues which could have been raised in the prior action].)

Appellants contend that Standard violated the automatic stay when it sold the property, and that United violated the stay when it accepted proceeds from the sale. Appellants argue that the order terminating the stay did not become effective until it was entered in the bankruptcy court's docket on December 28, 1989, and thus that the December 21 sale was held while the stay was still in effect. This argument is based on the rule of construction set forth at section 102, subdivision (6) of the Bankruptcy Code, which states that " 'order for relief' means *entry* of an order for relief." (11 U.S.C.A. § 102(6), italics added.)

Appellants further argue that the bankruptcy court's order violated Civil Code section 2924g insofar as it "immediately terminated" the stay as to United and directed that, notwithstanding this statute, United could, "after filing this Order with the Court, proceed immediately" with the foreclosure. This argument is based on Civil Code section 2924g, subdivision (d), which provides that if a trustee's sale is stayed by operation of law, "the sale shall be conducted no sooner than seven days after the earlier of (1) dismissal of the action or (2) expiration or termination of the injunction, restraining order, or stay (which required postponement of the sale), whether by entry of an order by a court of competent jurisdiction, operation of law, or otherwise, unless the injunction, restraining order, or subsequent order expressly directs the conduct of the sale within that seven-day period." As appellants read this statute, no order for relief from the stay can be effective prior to its entry, and they submit that the bankruptcy court exceeded its jurisdiction by purporting to order relief from the stay upon filing, rather than entry, of the order. Appellants also reason that since the order was "void *ab initio*," they were not required to appeal from it or have it set aside to avoid the doctrine of res judicata.

■ This line of argument is not supported by the language of the statutes on which it is based. We agree with respondents that, as used in 11 United States Code Annotated section 102(6), the term "order for relief" does not refer to orders for relief from the automatic stay. "The order for relief is a

term of art used to describe the event that subjects the debtor to the bankruptcy court's jurisdiction under a particular chapter of the Code. Its main function is to distinguish between a voluntary bankruptcy and an involuntary bankruptcy. The order for relief is automatic upon the filing of a voluntary bankruptcy petition. The significance is to signal the start of certain events in bankruptcy." (Aaron, Bankruptcy Law Fundamentals (1995) § 2.02[3], p. 2-12, fns. omitted.) Thus, while the "order for relief" by which the debtor becomes bankrupt (11 U.S.C.A. §§ 301, 303(h)) is effective only upon "entry," the same is not true of an order for relief *from the automatic stay* (11 U.S.C.A. § 362(d)).

If appellants' theory were correct, then orders for relief from the stay which are only announced orally and not entered in the court's docket would never become effective. However, in *Noli* v. *C.I.R.* (9th Cir. 1988) 860 F.2d 1521, the Ninth Circuit held that an oral order for relief from the stay "was effective and binding on the parties." (*Id.* at p. 1525 [rejecting a contrary argument based on Fed Rules Civ.Proc., rule 58 (28 U.S.C.)]; see also *In re San Joaquin Roast Beef* (9th Cir. 1993) 7 F.3d 1413, 1416-1418 [order appointing bankruptcy trustee was effective when signed and filed by court, rather than upon entry in docket].) Indeed, a number of cases have indicated that bankruptcy courts have the power to grant retroactive relief from the stay. (See, e.g., *In re Kissinger* (9th Cir. 1995) 72 F.3d 107, 109; *Bronson* v. *U.S.* (Fed.Cir. 1995) 46 F.3d 1573, 1578; *Easley* v. *Pettibone Michigan Corp.* (6th Cir. 1993) 990 F.2d 905, 910; *In re Schwartz* (9th Cir. 1992) 954 F.2d 569, 572.) These cases also belie appellants' argument that orders for relief from the stay can only operate prospectively from the date of their entry on the docket.

■ We likewise fail to see any conflict between the bankruptcy court's order and Civil Code section 2924g, subdivision (d). This statute allows the bankruptcy court to direct that a sale be conducted within seven days after the stay is terminated for any reason, "whether by entry of an order . . . *or otherwise.*" (Civ. Code, § 2924g, subd. (d), italics added.) In this case, the order terminating the stay provided that it would be effective upon filing, rather than upon entry. In the absence of relevant authority to the contrary, we conclude that the order was a valid one. The stay was thus terminated, "otherwise" than by "entry" of an order, when the order was *filed* on December 20, 1989.

The sale was not held until the next day, after the stay was lifted. The timing of the sale was consistent with the order's provision for immediate foreclosure upon the filing of the order, and with Civil Code section 2924g, subdivision (d)'s allowance of sales within the normal seven-day waiting

period if the court expressly so directs. Accordingly, there was no violation of the automatic stay.

Even if the foreclosure had violated the stay, appellants would have been required to raise that claim in the bankruptcy court. "The bankruptcy court ha[s] jurisdiction over all claims alleging willful violation of the automatic stay." (*In re Davis* (Bankr. 9th Cir. 1995) 177 Bankr. 907, 912.) The existence of a federal remedy for violation of the stay must be read as an implicit rejection of state court remedies. (See *Idell* v. *Goodman* (1990) 224 Cal.App.3d 262, 270-271 [273 Cal.Rptr. 605].)

Moreover, there is no question that the bankruptcy court had jurisdiction over the subject matter and the parties in the proceedings for relief from the stay. Thus, even if the court had otherwise exceeded its powers in ordering immediate relief, that fact would not have permitted a collateral attack on the order herein. (See *Law Offices of Stanley J. Bell* v. *Shine, Browne & Diamond* (1995) 36 Cal.App.4th 1011, 1021-1027 [43 Cal.Rptr.2d 717] [collateral attack on order allegedly in excess of jurisdiction was barred by "principles of estoppel, disfavor of collateral attack, and res judicata"].) Appellants were required to seek modification of the order for relief from the stay, or file an appeal from that order, even if it was "void" under their theory.

Therefore, we conclude that all claims involving the motion and order for relief from the stay were properly dismissed.

Appellants' other claims against Standard in connection with the foreclosure also lack merit. ■ Appellants assert that Standard was their fiduciary in connection with the sale, and that Standard unlawfully failed to notify them when the sale would take place. However, the trustee under a deed of trust is not the trustor's fiduciary (*Hatch* v. *Collins* (1990) 225 Cal.App.3d 1104, 1111 [275 Cal.Rptr. 476]), the trustee has no duty to provide notice of the sale except as specifically required by statute (Civ. Code, § 2924g, subd. (d); see *California Livestock Production Credit Assn.* v. *Sutfin* (1985) 165 Cal.App.3d 136, 141-142 [211 Cal.Rptr. 152]), and appellants identify no statutory obligation to provide any notice which Standard neglected to give in this instance. Appellants contend that Standard unlawfully failed to postpone the sale so as to obtain a better price for the property. (See *Hatch* v. *Collins, supra*, 225 Cal.App.3d at p. 1113 [trustee has discretion to postpone the sale to protect the trustor's interest].) However, appellants are required to allege tender of the amount of United's secured indebtedness in order to maintain any cause of action for irregularity in the sale procedure (*FPCI RE-HAB 01* v. *E & G Investments, Ltd.* (1989) 207 Cal.App.3d 1018, 1021-1022 [255 Cal.Rptr. 157]), and they have failed to do so.

Appellants also contend that Standard improperly delayed giving them the balance of the sale proceeds remaining after the satisfaction of United's lien, and that an interpleader action Standard filed involving those proceeds was a "sham." However, since it is undisputed that appellants claimed the surplus sale proceeds and that there was also a tax lien of record against the property, it appears that Standard had probable cause to file the interpleader action. (See *Cantu* v. *Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 883-884 [6 Cal.Rptr.2d 151]; see also *Pacific Loan Managment Corp.* v. *Superior Court* (1987) 196 Cal.App.3d 1485, 1489-1490 [242 Cal.Rptr. 547].) In any event, "[t]he allegedly improper filing of a lawsuit is redressable only in a cause of action for malicious prosecution" (*Cantu* v. *Resolution Trust Corp.*, *supra*, at p. 888), and no such cause of action is included in appellants' complaint. As a consequence, there are no grounds to reverse the judgment for Standard based on the filing of the interpleader action.

■ We further conclude that appellants' RICO count herein is untenable in light of the dismissal, with prejudice, of appellants' RICO claim against respondents by the federal district court. Although an appeal from the district court's judgment is pending before the Ninth Circuit, the judgment is final for res judicata purposes until it is reversed (*Estate of Hilton*, *supra*, 199 Cal.App.3d at p. 1168), and the doctrine of res judicata precludes the litigation of any claim which could have been raised in the federal action (*United States* v. *Alky Enterprises, Inc.*, *supra*, 969 F.2d at p. 1314; see also *In re Intl Nutronics, Inc.* (9th Cir. 1994) 28 F.3d 965, 969). Although appellants identify a number of allegations in their RICO cause of action herein which did not appear in their federal complaint, virtually all of the new allegations involve conduct which predated the federal suit and could have been alleged in that action. The only new allegations which could not have been included in the federal complaint are claims of fraud in connection with statements made to the courts in this case and the federal case on matters such as the appellate record and statutory interpretation. By no stretch do such statements alone constitute any form of "racketeering."

We note finally that appellants have no cause of action for conspiracy in the absence of any other viable claim. (5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 44, p. 107.) Thus, all of the causes of action against respondents were properly dismissed.

B. *Attorney Fee Awards*

Two arguments are advanced with respect to attorney fees. First, it is argued that the awards should be reduced by two-thirds, because respondents are entitled to fees only on the contract cause of action, and not on the tort

and RICO causes of action. Second, it is argued that one appellant, Fred Abdallah, is not liable for payment of any fees because he was not a signatory to the contracts on which the fee awards were based. Both of these arguments lack merit.

■ Apportionment of a fee award between fees incurred on a contract cause of action and those incurred on other causes of action is within the trial court's discretion (see *Nazemi* v. *Tseng* (1992) 5 Cal.App.4th 1633, 1642 [7 Cal.Rptr.2d 762]), and we find no abuse of that discretion in this case. "Where a cause of action based on the contract providing for attorney's fees is joined with other causes of action beyond the contract, the prevailing party may recover attorney's fees under [Civil Code] section 1717 only as they relate to the contract action." (*Reynolds Metals Co.* v. *Alperson* (1979) 25 Cal.3d 124, 129 [158 Cal.Rptr. 1, 599 P.2d 83].) However, "[a]ttorney's fees need not be apportioned when incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed." (*Id.* at pp 129-130.) For example, the holder of a note which provides for payment of fees incurred to collect the balance due is entitled to fees incurred in defending itself against "interrelated" allegations of fraud. (*Wagner* v. *Benson* (1980) 101 Cal.App.3d 27, 37 [161 Cal.Rptr. 516].) Here, the court could reasonably find that appellants' various claims were " 'inextricably intertwined' " (*Finalco, Inc.* v. *Roosevelt* (1991) 235 Cal.App.3d 1301, 1308 [286 Cal.Rptr. 616]), making it "impracticable, if not impossible, to separate the multitude of conjoined activities into compensable or noncompensable time units" (*Fed-Mart Corp.* v. *Pell Enterprises, Inc.* (1980) 111 Cal.App.3d 215, 227 [168 Cal.Rptr. 525]). We note in this regard that appellants themselves prayed for attorney fees in their fraud and RICO causes of action.

■ The court also properly refused to exonerate Fred Abdallah from liability for the fees. Although Fred Abdallah did not sign the note or deed of trust, he sued respondents for breach of those contracts, and he sought to recover attorney fees from respondents on his breach of contract action and related claims. A defendant that has signed a contract providing for attorney fees is generally entitled to fees if it prevails against a nonsignatory plaintiff in an action on the contract. (See *Real Property Services Corp.* v. *City of Pasadena* (1994) 25 Cal.App.4th 375, 380-381 [30 Cal.Rptr.2d 536] and cases cited.) Fred Abdallah's status as a nonsignatory is irrelevant; the only question is whether he would have been entitled to *his* fees if he had prevailed. (*Id.* at p. 382.) Since it is undisputed that Fred Abdallah would have been entitled to fees if he had been a prevailing party, there is no question that he is liable for fees as a losing party.

## C. *Sanctions*

United has moved for sanctions against appellants and their attorney on the ground that this appeal is frivolous. Although certain of appellants' arguments could be deemed to be frivolous, we are unable to conclude that the appeal as a whole is so utterly devoid of potential merit as to justify sanctions. (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 [183 Cal.Rptr. 508, 646 P.2d 179]; *Rice* v. *Dean Witter Reynolds, Inc.* (1991) 235 Cal.App.3d 1016, 1031 [1 Cal.Rptr.2d 265].)

## III. DISPOSITION

The judgments in favor of respondents are affirmed. Appellants request a stay of our decision affirming dismissal of the RICO claim pending a ruling on their related appeal to the Ninth Circuit. That request is denied. The orders for payment of attorney fees are affirmed. United's motion for sanctions on appeal is denied. Respondents shall recover their costs on appeal, and the trial court is directed to determine the amount of attorney fees to be awarded to respondents for legal services on appeal (see *Security Pacific National Bank* v. *Adamo* (1983) 142 Cal.App.3d 492, 498 [191 Cal.Rptr. 134]).

Anderson, P. J., and Reardon, J., concurred.

A petition for a rehearing was denied March 22, 1996, and appellants' petition for review by the Supreme Court was denied May, 15, 1996.