Filed 7/24/14  Caplin v. U.S. Bank CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| BRUCE L. CAPLIN,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>U.S. BANK, N.A., as Trustee, etc., et al.,<br><br>    Defendants and Respondents. | 2d Civil No. B250032<br>(Super. Ct. No. 56-2012-00414752)<br>(Ventura County) |

Bruce L. Caplin appeals from the judgment entered after the trial court sustained a demurrer to his second amended complaint without leave to amend. Caplin filed this action against JP Morgan Chase Bank, N.A. (JPMC), California Reconveyance Company (CRC) and U.S. Bank, N.A. (U.S. Bank) to enjoin the sale of a property securing his promissory note and to recover monetary damages.  He contends the illicit business plan of the originator of the loan – not a party to these proceedings – renders it invalid.  We affirm.

*FACTUAL AND PROCEDURAL HISTORY*

In February 2007, Caplin executed a note for $700,000 that was secured by real property he owned in Ojai.  Caplin conveyed an interest in the property to CRC to hold as security for the loan.  The deed of trust gives the

lender/beneficiary the power to instruct the trustee to sell the property if Caplin failed to make the payments required by his note.

The deed of trust identifies Washington Mutual Bank (WaMu) as the lender and beneficiary, CRC as the trustee, and Caplin as the borrower. Caplin's secured note was assigned to WaMu Asset Acceptance Corp. and then to HY4Trust, a pool of securitized loans that investors paid a WaMu subsidiary to service.

In September 2008, the Office of Thrift Supervision declared WaMu to be a failed bank and appointed the Federal Deposit Insurance Corporation (FDIC) as its receiver. On September 25, 2008, FDIC transferred certain of WaMu's assets and liabilities to JPMC pursuant to a Purchase and Assumption Agreement that explicitly provides JPMC did not assume any liability for claims made for damages or for other relief arising out of the loans WaMu made before September 25, 2008.

Caplin made payments on the loan until January 2011. He applied for a modification of the loan but his application was denied because his income was insufficient to warrant either a new loan or new loan terms. On August 31, 2011, the deed of trust was assigned to U.S. Bank and a notice of default and election to sell was recorded. As of August 29, 2011, Caplin was $25,773 in arrears. A Notice of Trustee's Sale was recorded on December 1, 2011, that declares Caplin then owed $745,887 on the loan. The trustee's sale was postponed and has not yet been rescheduled. Caplin has not tendered all or any part of the present balance of principal and interest due on the loan.

Caplin's original complaint was superseded by a first amended complaint. Respondents' demurrers were sustained with leave to amend. Caplin's second amended complaint, filed on January 18, 2012, alleges his secured promissory note is invalid because (1) there was "no second party to [the] loan contract"; (2) the loan was "against public policy"; (3) the loan was "unlawful"; (4) the loan was "unconscionable"; (5) JPMC committed "fraud by omission" by not telling him his promissory note was invalid; and (6) the assignment of the deed of trust was fraudulent.

2

Caplin seeks to enjoin the foreclosure and asks this court to declare the note, the deed of trust and the assignment of the deed of trust to be nullities based upon the contention WaMu's business plan was to induce vulnerable persons like himself to apply for loans secured by their homes that it knew could not be repaid. For example, Caplin alleges that WaMu induced him to apply for a loan of $700,000 based upon a false verified application that states his monthly income was $38,321 per month, when in fact he earned only $4,488 in the entire preceding year. Caplin does not allege that any of the named defendants played any role in WaMu's allegedly illicit scheme.

Respondents' demurrers to the second amended complaint were sustained without leave to amend. The trial court found that the Purchase and Assumption Agreement specifically exempts JPMC from claims borrowers may have against WaMu. The court premised its ruling on a finding that Caplin received $700,000 in the transaction he sought to rescind but had not offered to "do equity" by tendering the amount due on the note.

At its core, Caplin's complaint theorizes that because WaMu's loan origination practices were illicit, unconscionable and against public policy, the promissory note and deed of trust executed by Caplin are unenforceable nullities. Caplin reasons that California's nonjudicial foreclosure statutes do not attach to a nullity and thus do not prohibit this action to declare his note and the trust deed affecting his property to be invalid and to prevent U.S. Bank from exercising the power of sale in the deed of trust. Said another way, Caplin contends a defaulting borrower, without tendering the balance due on a secured promissory note, can convert the speedy remedy provided by California's nonjudicial foreclosure statutes to the time-consuming and expensive remedy of judicial foreclosure by simply filing a suit that challenges the validity of the note and deed of trust he executed in exchange for $700,000. He is wrong.

3

DISCUSSION

A. *Standard of Review*

"'"On appeal from an order of dismissal after an order sustaining a demurrer, our standard of review is de novo, i.e., we exercise our independent judgment about whether the complaint states a cause of action as a matter of law."' [Citation.] 'A judgment of dismissal after a demurrer has been sustained without leave to amend will be affirmed if proper on any grounds stated in the demurrer, whether or not the court acted on that ground.' [Citation.] In reviewing the complaint, 'we must assume the truth of all facts properly pleaded by the plaintiffs, as well as those that are judicially noticeable.' [Citation.]" ¶] Further, '[i]f the court sustained the demurrer without leave to amend, . . . we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. . . . If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred. . . . The plaintiff has the burden of proving that an amendment would cure the defect.' [Citation.] '[S]uch a showing can be made for the first time to the reviewing court. . . .' [Citation.]" (*Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1153 (*Gomes*).)

B. *The demurrer was properly sustained.*

1. *Applicable Law*

Loans issued to acquire or refinance real property in California generally involve the use of a promissory note to evidence the debt and a deed of trust to create a security interest in the property. The borrower conveys the security interest to an institutional trustee that holds it as security for the payment of the note to the beneficiary-creditor. The deed of trust empowers the beneficiary-creditor to instruct the trustee to foreclose on the property if the trustor-debtor defaults by failing, for example, to make the payments called for by the note.

Loans secured by real properties are typically pooled in securitized investment trusts. The backbone of the industry that furnishes such loans to millions

4

of Californians is the availability of the quick, cost-effective remedy of nonjudicial foreclosure in the event of a default.

### 2. Caplin is not permitted by California's nonjudicial foreclosure statutes to forestall U.S. Bank's foreclosure sale.

"Civil Code[1] sections 2924 through 2924k . . . 'provide a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust. [Citation.] 'These provisions cover every aspect of exercise of the power of sale contained in a deed of trust.' [Citation.] 'The purposes of this comprehensive scheme are threefold: (1) to provide the creditor/beneficiary with a quick, inexpensive and efficient remedy against a defaulting debtor/trustor; (2) to protect the debtor/trustor from wrongful loss of the property; and (3) to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser.' [Citation.]" (*Gomes*, *supra*, 192 Cal.App.4th at p. 1154.)

A defaulting debtor is authorized by the statute to pursue a preemptive judicial action against the foreclosing party if *that party* is guilty of misconduct in initiating and processing a nonjudicial foreclosure. (*Gomes*, *supra*, 192 Cal.App.4th at p. 1154, fn. 5, citing *California Golf, L.L.C. v. Cooper* (2008) 163 Cal.App.4th 1053, 1070.) For example, in *Keshtgar v. U.S. Bank* (2014) 226 Cal.App.4th 1201, we pointed out that preemptive relief may be available to a homeowner who can allege specific facts of fraud in which the homeowner has suffered demonstrable prejudice. But the exhaustive nature of the legislation forecloses reading any other or additional requirements into the nonjudicial foreclosure statute. (*Gomes*, *supra*, at p. 1154, fn. 5, citing *Lane v. Vitek Real Estate Industries Group* (E.D. Cal. 2010) 713 F.Supp.2d 1092, 1098; see also *Moeller v. Lien* (1994) 25 Cal.App.4th 822, 834.)

The statute does not authorize judicial intervention where the defaulting debtor claims the terms of the promissory note are unconscionable or the business

---

[1] All statutory references are to this code unless otherwise stated.

practices of the non-party lender violate public policy. (See *Jenkins v. JP Morgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 509-510.) And as in *Gomes*, we see no basis for implying such authority. A nonjudicial foreclosure is intended to be concluded quickly and cost-effectively. That is accomplished when there is no oversight by a court. If the rule were otherwise, defaulting debtors would have the power to transmute quick, cost-effective nonjudicial foreclosure proceedings into costly and time-consuming judicial foreclosures. "It would be inconsistent with the comprehensive and exhaustive statutory scheme regulating nonjudicial foreclosures to incorporate another unrelated cure provision into statutory nonjudicial foreclosure proceedings." (*Moeller v. Lien*, *supra*, 25 Cal.App.4th at p. 834.)

*3. Caplin must tender the balance due on the note to*
*rescind the note and quiet title in the property to himself.*

A defaulting debtor may not, without tendering the entire amount due on the promissory note, maintain an action to rescind a promissory note and deed of trust for the purpose of delaying or shutting down a nonjudicial foreclosure. Caplin did not allege that he returned or offered to return the loan proceeds prior to requesting the remedy of rescission of the refinancing transaction. (*Garcia v. Wachovia Mortgage Corp.* (C.D. Cal. 2009) 676 F.Supp.2d 895, 901 ["'Rescission is an empty remedy without [plaintiff's] ability to pay back what she has received'"].) Section 1691 provides: "Subject to Section 1693, to effect a rescission a party to the contract must, promptly upon discovering the facts which entitle him to rescind if he is free from duress, menace, undue influence or disability and is aware of his right to rescind[,] . . . [r]estore to the other party everything of value which he has received from him under the contract or offer to restore the same upon condition that the other party do likewise, unless the latter is unable or positively refuses to do so."

"It is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured. [ Citation.]" (*Shimpones v. Stickney* (1934) 219 Cal. 637, 649.) The borrower must allege tender of the amount of the debt to challenge any irregularity in the sale procedures and to void the sale.

6

(*Abdallah v. United Savings Bank* (1996) 43 Cal.App.4th 1101, 1109; *Kelley v. Mortgage Electronic Registration Systems, Inc.* (N.D. Cal. 2009) 642 F.Supp.2d 1048, 1057 [noting that a basic requirement of a quiet title action is an allegation that plaintiffs "are the rightful owners of the property, i.e., that they have satisfied their obligations under the Deed of Trust"].)  In the absence of an actual tender, however, Caplin cannot state a claim to quiet title to the property to himself. (*Abdallah*, *supra*, at p. 1109.)

> *4.  Caplin cannot assert claims against JPMC for WaMu's lending*
> *and loan servicing activities prior to WaMu's financial collapse.*

Caplin contends JPMC knew WaMu rushed him into a loan it knew he neither qualified for nor could repay by completing falsified loan documents for him that fraudulently inflated his income.  Caplin acknowledges that the loan was originated by WaMu in 2007, more than one year before JPMC acquired the defunct bank's assets from the FDIC.  Nevertheless, he asserts that because JPMC knew of WaMu's illicit business plan and knew he was a victim, it was obligated to tell him he need not make loan payments to anyone.

The terms of the Purchase and Assumption Agreement executed by JPMC and the FDIC on September 25, 2008, explicitly state that JPMC's acquisition of WaMu's assets did not include the assumption of "any liability" associated with the defunct bank's lending and loan servicing activities prior to its financial collapse. As there is no dispute as to the authenticity of the Purchase and Assumption Agreement found in the record, it is obvious Caplin cannot pursue a claim against JPMC for WaMu's alleged inflation of his income when he applied for his loan. Thus, sustaining the demurrer without leave to amend as to this allegation was proper.  *(Jenkins v. JP Morgan Chase Bank*, *supra*, 216 Cal.App.4th at p. 526.)

> *5.  Caplin did not show that amendments*
> *to his complaint would cure its defects.*

Caplin requests that we reverse the trial court's ruling on the demurrer or permit him 30 days to file a further amended complaint.  But permitting a plaintiff

7

to file an amended complaint is appropriate when it appears that the defects in the existing pleading can be cured by amendments or additional allegations.  It was Caplin's burden to make that showing and he failed to do so.  Here, Caplin failed to show that changes to the existing complaint or additional allegations would state a cause of action that permits the relief he requests.  There is no theory upon which Caplin would be entitled to keep the money he received from WaMu, to have his promissory note cancelled and to extinguish the burden of the mortgage lien on his property.

## DISPOSITION

The judgment is affirmed.  Respondents shall recover their costs on appeal.

NOT TO BE PUBLISHED.

BURKE, J.[*]

We concur:

GILBERT, P. J.

YEGAN, J.

---

[*] (Judge of the Superior Court of San Luis Obispo County, assigned by the Chief Justice pursuant to art. 6, § 6 of the Cal. Const.)

Henry J. Walsh, Judge

Superior Court County of Ventura
_____

Doug Michie for Plaintiff and Appellant.

Bryan Cave LLP, John W. Amberg, Timothy L. Hayes for Defendants and Respondents.