[No. D043620. Fourth Dist., Div. One. Feb. 2, 2005.]

JOHN ERICKSON et al., Plaintiffs, Cross-complainants and Appellants, v. R.E.M. CONCEPTS, INC., Defendant, Cross-defendant and Respondent.

COUNSEL

Naumann & Levine, William H. Naumann and Steven M. Nuñez for Plaintiffs, Cross-complainants and Appellants.

Parker Stanbury and Timothy D. Lucas for Defendant, Cross-defendant and Respondent.

OPINION

**IRION, J.**—After losing the jury trial in this construction defect litigation, plaintiffs and cross-complainants John Erickson et al.[1] (collectively Erickson) appeal the portion of the amended judgment awarding attorney fees to defendant and cross-defendant R.E.M. Concepts, Inc. (R.E.M.)[2] under Civil Code[3] section 1717. Erickson contends the court erred to the extent it awarded R.E.M. attorney fees attributable to R.E.M.'s defense against Erickson's noncontractual claims. Erickson also contends the court erred by concluding he assumed liability for attorney fees as the assignee of the cross-complaint brought against R.E.M. by YLR, Inc. and its related entities.[4]

R.E.M. moves to dismiss Erickson's appeal as untimely, a motion we deny. Further, we determine Erickson has not established any reversible error with respect to the attorney fee award, and accordingly, affirm the amended judgment.

---

[1] See footnotes 6 and 7, *post.*

[2] R.E.M. was formerly known as Hegwer Industries, Inc. (Hegwer), an entity that did business as ABC Products Company (ABC).

[3] All further statutory references are to the Civil Code unless otherwise specified.

[4] We refer to YLR, Inc., Oceanside Terracina, Ltd. and Bella Collina, Ltd. collectively as YLR.

I

INTRODUCTION

A

*Factual and Procedural Background*

YLR and entities related to Brehm Homes[5] were the developers and general contractors of two housing projects in Oceanside. In October 2001 John Erickson and other homeowners in the developments commenced this litigation by suing various defendants, including Brehm and YLR, for strict liability, negligence, negligence per se, breach of implied warranties, breach of contract, negligent misrepresentation and negligent failure to disclose, fraud, and negligent infliction of emotional distress. Initially, Erickson did not sue any subcontractor.

In January 2002 Brehm cross-complained against various entities, including its window/glass door subcontractor R.E.M., for implied indemnity, equitable indemnity, breach of express and implied warranties, breach of contract, negligence, contribution, declaratory relief as to duty to defend (§ 2778), declaratory relief as to duty to indemnify (*ibid.*), and declaratory relief as to contractual duties.

In March 2002 YLR cross-complained against various parties, including R.E.M., for express indemnity, implied equitable indemnity, breach of contract, breach of express and implied warranties, contribution and declaratory relief.

In November 2002 Erickson settled with all parties other than R.E.M. In December 2002 the superior court granted the motions of Brehm and YLR for determinations that their settlements with Erickson were made in good faith. In accord with the settlements, Brehm and YLR each separately assigned its subcontract with R.E.M. and its cross-complaint's causes of action against R.E.M. to certain plaintiff homeowners, including John Erickson (the Assignee Cross-complainants, see fn. 7, *post*). Further, in January 2003, the court granted leave to certain plaintiff homeowners, including John Erickson (the Direct Action Plaintiffs, see fn. 6, *post*), to

---

[5] We refer to Brehm Homes, Brehm Builders, Brehm Communities, Brehm Construction and Encore Oceanside LLC collectively as Brehm.

amend their complaint to pursue R.E.M. directly for strict liability and negligence claims (the direct action).

In June 2003 Erickson's claims against R.E.M. came on for trial. Before empanelling the jury, the superior court ordered the trial bifurcated with all causes of action in the direct action to be tried in the first phase of trial, including the issues of strict liability, negligence, causation and Erickson's direct damages. The court ordered that the trial's second phase, if necessary, would relate to any unresolved issues of fact and law with regard to the assigned cross-complaints. Further, the court ruled the assigned subcontracts' indemnity provisions required Erickson to establish R.E.M.'s negligence in order to trigger R.E.M.'s indemnity obligations. The court also ordered that the jury's findings on the common issues of negligence, strict liability and causation in the first phase of trial would be "determinative of those factual issues as they related" to the assigned cross-complaints in the trial's second phase without relitigation.

In July 2003, after Erickson prosecuted his direct action against R.E.M. in the first phase of trial, the jury returned a special verdict finding that R.E.M.'s predecessor ABC was not negligent; ABC did not manufacture or supply defective window products; and Erickson was not contributorily negligent. The court entered the jury's special verdict favoring R.E.M. against Erickson. Consistent with its pretrial rulings on legal issues related to the assigned cross-complaints, the court then granted R.E.M.'s motion for directed verdicts against Erickson on those cross-complaints.

On August 19, 2003, the court entered a defense judgment on the special verdict and the directed verdicts. The judgment ordered that the Direct Action Plaintiffs recover nothing on their direct complaint against R.E.M., and that R.E.M. recover from the Direct Action Plaintiffs its costs of suit with regard to the complaint. The court also ordered that the Assignee Cross-complainants recover nothing on the assigned cross-complaints against R.E.M., and that R.E.M. recover from the Assignee Cross-complainants its cost of suit with regard to those cross-complaints.

B

*The Trial Court Awards Attorney Fees to R.E.M.*

In September 2003, based on R.E.M.'s subcontract agreements with Brehm and YLR that had been assigned to Erickson and were at issue under the assigned cross-complaints, R.E.M. filed a posttrial motion for attorney fees

and defense costs against Erickson under section 1717. R.E.M. sought attorney fees and costs in the total amount of $114,618.96, consisting of (1) $54,312.50 attorney fees incurred through August 20, 2003, (2) $937.50 attorney fees related to R.E.M.'s motion for attorney fees and costs, and (3) $59,368.96 costs to the extent not separately awarded. The total attorney fees requested by R.E.M. did not include the $625 attorney fees it identified as clearly associated only with its defense against Erickson's complaint and not related to its defense against the cross-complaints.

On October 17, 2003, at a hearing on R.E.M.'s motion for attorney fees and costs, the court directed that R.E.M. submit evidence of the attorney fees it incurred solely in defense of the assigned cross-complaints. In response to the court's directive, R.E.M. presented evidence that $9,901.75 of the requested attorney fees related exclusively to its defense of the cross-complaints as opposed to its fees related to the defense of issues common to Erickson's direct action complaint and the cross-complaints.

On November 5, 2003, the court issued a minute order (the November 2003 Minute Order) granting R.E.M.'s motion for attorney fees and costs against "all plaintiffs listed in the judgment." The November 2003 Minute Order awarded R.E.M. its requested $114,618.96 attorney fees, plus an additional $2,062.50 for briefing and hearings related to R.E.M.'s motion for attorney fees. The November 2003 Minute Order also stated that no later than November 12, 2003, R.E.M. was to file and serve an amended judgment for the court's signature "in accordance with the above ruling."

On November 10, 2003, R.E.M. submitted to the trial court a proposed amended judgment that would have awarded R.E.M. $40,662.25 costs against the Direct Action Plaintiffs, and $115,743.96 attorney fees and costs against the Assignee Cross-complainants. Erickson objected to the amount of attorney fees the proposed amended judgment would award to R.E.M. and sought clarification of the November 2003 Minute Order. On November 26, 2003, at an ex parte hearing, the court clarified the November 2003 Minute Order and directed R.E.M. to submit another proposed amended judgment consistent with that clarification (the November 2003 Clarification Order).

Consistent with the November 2003 Clarification Order, R.E.M. submitted a proposed amended judgment that was entered by the court on December 8, 2003 (the December 2003 Judgment). The December 2003 Judgment awarded

R.E.M. \$40,662.25 costs from the Direct Action Plaintiffs,[6] and \$97,037.25 attorney fees and costs from the Assignee Cross-complainants.[7]

On January 9, 2004, Erickson filed a notice of appeal of (1) the November 2003 Minute Order; (2) the November 2003 Clarification Order; and (3) the December 2003 Judgment. On December 10, 2003, the court served the parties' counsel with the December 2003 Judgment.

II

R.E.M.'S MOTION TO DISMISS ERICKSON'S APPEAL

R.E.M. has moved to dismiss Erickson's appeal. Asserting the November 2003 Minute Order was the only appealable order or judgment set forth in Erickson's notice of appeal, R.E.M. contends the appeal should be dismissed as untimely since it was filed 65 days after service of a file-stamped copy of the November 2003 Minute Order. Further, R.E.M. contends the December 2003 Judgment is not separately appealable because it merely accomplished the ministerial or clerical function of reflecting the award of attorney fees and costs made in the November 2003 Minute Order. However, R.E.M.'s motion to dismiss this appeal is without merit.

---

[6] The December 2003 Judgment identified the Direct Action Plaintiffs as John Erickson, Suzanne Erickson, Raymond Chambers, Sandra Chambers, Juan DeLeon, Karina DeLeon, Alfredo Fernandez, Teresita Fernandez, Steve Folsom, Linda Folsom, Jeff Gormley, Joyce Gormley, Rudy Graciano, Cynthia Graciano, Kevin Grant, Julie Grant, Richard Heenan, Susan Heenan, Michael Henry, Tanya Henry, Lawrence Larimer, Janice Luncford, Joseph Mayo, Maria Mayo, Angela Maney-Sorrell, Ghassen Mati, Faiza Mati, Mark Mosur, Hanna Mosur, Vihn Nguyen, Tuan Nguyen, Darryl Sisneros, Karyl Sisneros, Jacqueline Smid, Kevin Smith, Diane Smith, Carl B. Sainten, Tam Duc Tran, Pauline Tran and Chiyoko Yasutake.

[7] The December 2003 Judgment identified the Assignee Cross-complainants as John Erickson, Suzanne Erickson, Tim Barrier, Lesley Barrier, James Braden, Patricia Braden, David Callahan, Lisa Callahan, Christine Castro, Veronica Castro, Raymond Chambers, Sandra Chambers, Sing-Tien Chiang, Shui-Hsai Chiang, John Corsano, Christine Corsano, Juan DeLeon, Karina DeLeon, Alfredo Fernandez, Teresita Fernandez, Marin Finkelstein, Bernice Finkelstein, Steven Folsom, Linda Folsom, Michael Gillick, Paula Gillick, Hernan Gonzalez, Marta Gonzalez, Thomas Good, Mia Good, Jeff Gormley Joyce Gormley, Rudy Graciano, Cynthia Graciano, Kevin Grant, Julie Grant, Gary Griffiths, Alesha Griffiths, Richard Heenan, Susan Heenan, Michael Henry, Tanya Henry, Bobette Jamieson, Nick Kerger, Helen Kerger, Clark Kucharski, Shannon Kucharski, Lawrence Larimer, Melchor Lee, Dorcas Lee, Roger Leighton, Dierdre Leighton, Salvador Lopez, Janice H. Luncford, Gary Maieson, Angela S. Maney-Sorrell, Ghasan Mati, Faiza Mati, Joseph Mayo, Maria Mayo, Susan Mongoven, Frank Moreno, Meghan Moreno, Mark Mosur, Hanna Mosur, Glenn Mueller, Carol Mueller, Vinh Nguyen, Tuan Nguyen, Kevin Oliver, Susan Oliver, John Plewka, Maria Plewka, Carl Sainten, Neil Schumacher, Dana Schumacher, Darryl Sisneros, Karyl Sisneros, Jacqueline Smith, Kevin Smith, Diane Smith, Lance Sutherland, Wendy Sutherland, Ben Taylor, Pamela Taylor, Maria Tejada, Tam Duc Tran, Pauline Tran, Matthew Warner, Julia Warner, Nicholas Warrillow, Lisa Warrillow and Chiyoko Yastuake.

R.E.M. contends Erickson was "E Served" with a file stamped copy of the November 2003 Minute Order 65 days before Erickson filed his notice of appeal on January 9, 2004.[8] R.E.M. has submitted the declaration of its counsel (Timothy D. Lucas) asserting that on November 5, 2003, "according to the on-line Lexis-Nexis File & Serve/Courtlink records and pursuant to the Electronic Filing And Service Order," the trial court "electronically served" the parties' counsel "with its file[-]stamped" November 2003 Minute Order. However, the record does not contain documentary evidence sufficient to show any such service complied with the requirements of the California Rules of Court[9] so as to trigger commencement of the 60-day appeal period. (Rule 2(a) & (f).)[10] In particular, the copies of the electronic documents entitled "Filing & Service Details" and attached as exhibits to Attorney Lucas's declaration do not include copies of any document entitled "Notice of Entry" of the November 2003 Minute Order or a "filed-stamped copy" of that order. (Rule 2(a)(1).)

Nevertheless, even if the content of the electronic documents bearing on the November 2003 Minute Order were deemed sufficient to trigger the 60-day appeal period under rule 2(a), R.E.M.'s motion to dismiss this appeal would be meritless. Rule 2(c)(2) provides: "The entry date of an appealable order that is entered in the minutes is the date it is entered in the permanent minutes. *But if the minute order directs that a written order be prepared, the entry date is the date the signed order is filed . . . .*" (Italics added.) The November 2003 Minute Order expressly directed R.E.M. to file and serve an amended judgment for the court's signature "in accordance with the above ruling." However, not until December 8, 2003, did the court sign an amended judgment based on the November 2003 Minute Order. Hence, under rule 2(c)(2), the entry date of the November 2003 Minute Order for purposes of commencing the 60-day appeal period was December 8, 2003.

---

[8] In October 2001, the superior court had issued an "Electronic Filing and Service Order" governing this case.

[9] All further rule references are to the California Rules of Court unless otherwise specified.

[10] Rule 2(a) provides:

"Unless a statute or rule 3 [not applicable here] provides otherwise, a notice of appeal must be filed on or before the earliest of:

"(1) 60 days after the superior court clerk mails the party filing the notice of appeal a document entitled 'Notice of Entry' of judgment or a file-stamped copy of the judgment, showing the date either was mailed;

"(2) 60 days after the party filing the notice of appeal serves or is served by a party with a document entitled 'Notice of Entry' of judgment or a file-stamped copy of the judgment, accompanied by proof of service; or

"(3) 180 days after entry of judgment."

Rule 2(f) provides: "As used in (a) and (d), 'judgment' includes an appealable order if the appeal is from an appealable order."

Moreover, the attorney fee portion of the December 2003 Judgment was independently appealable because it substantially modified the November 2003 Minute Order. (*CC-California Plaza Associates v. Paller & Goldstein* (1996) 51 Cal.App. 4th 1042, 1048 [59 Cal.Rptr.2d 382] (*CC-California*).)[11] Contrary to R.E.M.'s contention, the December 2003 Judgment did not simply accomplish the ministerial or clerical function of reflecting the award made in the November 2003 Minute Order. Instead, the $97,037.25 in attorney fees awarded to R.E.M. by the December 2003 Judgment constituted a substantial reduction from the November 2003 Minute Order's award to R.E.M. of attorney fees of $114,618.96 plus an additional $2,062.50 for briefing and hearings related to R.E.M.'s attorney fee motion. (*Ibid.*) Hence, as filed within 60 days after December 10, 2003, the date of service of the December 2003 Judgment, Erickson's notice of appeal filed on January 9, 2004, was timely. Accordingly, R.E.M.'s motion to dismiss Erickson's appeal must be denied.

## III

## ERICKSON'S APPEAL

Erickson contends the trial court erred to the extent it awarded R.E.M. attorney fees incurred in its defense against the noncontractual claims of Erickson's direct action during the first phase of trial. Asserting those bifurcated noncontractual claims were tried separately and independently from the contractual claims of the assigned cross-complaints, Erickson contends an award of contractual attorney fees under section 1717 attributable to trying the direct action was beyond the court's authority. Erickson concludes R.E.M. should be limited to a $9,901.75 attorney fee award, a sum (1) characterized by Erickson as the amount of fees incurred after excluding fees attributable to the trial of tort claims and (2) elsewhere mischaracterized by Erickson as the amount of fees incurred while the tort and contract claims were jointly litigated. Further, Erickson contends the document by which he claimed the assignment of YLR's cross-complaint specifically relieved Erickson from facing attorney fee obligations if he did not succeed at trial. However, Erickson's contentions are without merit.

---

[11] " 'The effect of an amended judgment on the appeal time period depends on whether the amendment substantially changes the judgment or, instead, simply corrects a clerical error: . . . When the trial court amends a nonfinal judgment in a manner amounting to a *substantial modification* of the judgment . . . , the amended judgment supersedes the original and becomes the appealable judgment (there can be only one "final judgment" in an action . . . ). Therefore, a new appeal period starts to run from notice of entry or entry of the *amended* judgment. . . . On the other hand, if the amendment merely corrects a *clerical error* and does not involve the exercise of judicial discretion, the original judgment remains effective as the only appealable final judgment; the amendment does *not* operate as a new judgment from which an appeal may be taken.' " (*CC-California, supra,* 51 Cal.App.4th at p. 1048.)

## A

### *Amount of Fee Award in December 2003 Judgment Was Proper*

R.E.M.'s motion for attorney fees and defense costs was based on the grounds that (1) Brehm and YLR cross-complained against R.E.M. for express contractual indemnity and breach of contract based upon written subcontract agreements; (2) those subcontract agreements contained attorney fee clauses that were made reciprocal as a matter of law under section 1717; (3) the Assignee Cross-complainants were the assignees of the cross-complaints' causes of action against R.E.M., and they expressly assumed liability for an attorney fee award if they did not prevail against R.E.M. on the cross-complaints; (4) judgment was entered favoring R.E.M. against the Assignee Cross-complainants on the cross-complaints; (5) R.E.M. was the prevailing party within the meaning of section 1717; and (6) in defending itself, R.E.M. incurred attorney fees and costs of more than $114,618.

In granting R.E.M.'s motion for attorney fees, the trial court stated: (1) Under the December 2003 Judgment, R.E.M. was the prevailing party and thus entitled to attorney fees based on the subcontracts assigned to Erickson by Brehm and YLR (Code Civ. Proc., §§ 1032, 1033.5, subd. (a)(10)); (2) each subcontract contained an attorney fee clause that provided the prevailing party would be awarded attorney fees in any action on the subcontract (§ 1717); (3) although Erickson was not a party to those subcontracts, he was obligated on the subcontractual attorney fee provisions as the assignee of Brehm and YLR; and (4) although the language of the two assignments differed slightly, each assigned the rights and obligations of the subcontract's attorney fee provisions.

In concluding R.E.M. was entitled to recover attorney fees and costs in the amount of $97,037.25 from the Assignee Cross-complainants, the trial court stated: (1) After the assigned cross-complaints for indemnity were bifurcated, the direct action proceeded; (2) because the subcontracts at issue under the cross-complaints authorized recovery of attorney fees, the question was whether R.E.M. was entitled to fees for its defense against both the cross-complaints and Erickson's direct action; (3) the issues in the defense against the direct action were identical to the issues in defending the cross-complaints; (4) before trial, the court had ruled the subcontracts' indemnity provisions required that Erickson demonstrate R.E.M.'s negligence in order to trigger the indemnity obligations (*Heppler v. J.M. Peters Co.* (1999) 73 Cal.App.4th 1265, 1272 [87 Cal.Rptr.2d 497] (*Heppler*)); (5) the direct action

for negligence against R.E.M. added to Erickson's complaint after the settlement did not significantly alter defense of the action from R.E.M.'s perspective; (6) if Erickson had not added that direct action and had instead proceeded only on the assigned cross-complaints, the trial would have included testimony about R.E.M.'s negligence; (7) without the procedural bifurcation, the court could not have apportioned attorney fees incurred in defense of the direct action from those incurred only in defending against the cross-complaints; (8) Attorney Lucas's declaration acknowledged that attorney fees incurred only in defense of the direct action had been deducted; and (9) even assuming that other attorney fees were incurred in defending against the direct action, additional apportionment was not required because any such fees were incurred for representation on issues common to the claims in Erickson's direct causes action and the claims in the assigned cross-complaints (*Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 129–130 [158 Cal.Rptr. 1, 599 P.2d 83] (*Reynolds*)).

■ In attacking the amount of attorney fees awarded to R.E.M., Erickson contends the trial court should have determined the direct action was not a contract action, was not "joined" with cross-complaints' contractual claims, and did not require factual findings identical to those on the contractual claims. However, the court properly awarded R.E.M. attorney fees on issues common to Erickson's complaint and the assigned cross-complaints. "Apportionment of a fee award between fees incurred on a contract cause of action and those incurred on other causes of action is within the trial court's discretion . . . ." (*Abdallah v. United Savings Bank* (1996) 43 Cal.App.4th 1101, 1111 [51 Cal.Rptr.2d 286] (*Abdallah*); accord, *San Dieguito Partnership v. San Dieguito River Valley Regional etc. Authority* (1998) 61 Cal.App.4th 910, 920 [72 Cal.Rptr.2d 91] (*San Dieguito*) [" 'A trial court's exercise of discretion is abused only when its ruling " 'exceeds the bounds of reason, all of the circumstances before it being considered' " ' "].) ■ "Where a cause of action based on the contract providing for attorney's fees is joined with other causes of action beyond the contract, the prevailing party may recover attorney's fees under section 1717 only as they relate to the contract action." (*Reynolds, supra,* 25 Cal.3d at p. 129; cited in *Abdallah,* at p. 1111; see *McKenzie v. Kaiser-Aetna* (1976) 55 Cal.App.3d 84, 89–90 [127 Cal.Rptr. 275] ["The only reasonable interpretation of section 1717 is that it reciprocates the allowance of attorney's fees only when such fees are incurred to enforce the provisions of the contract"].) "However, '[a]ttorney's fees need not be apportioned when incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed.' " (*Abdallah,* at p. 1111, citing *Reynolds,* at pp. 129–130; accord, *San Dieguito,* at p. 920.) "A litigant may not increase

his recovery of attorney's fees by joining a cause of action in which attorney's fees are not recoverable to one in which an award is proper." (*Reynolds*, at p. 129.) "Conversely, plaintiff's joinder of causes of action should not dilute its right to attorney's fees." (*Reynolds*, at p. 129.) Considering the common issues raised under Erickson's direct action and the assigned cross-complaints, the court did not abuse its discretion by awarding R.E.M. attorney fees incurred in litigating the direct action in the first phase of trial. (*Reynolds*, at p. 129; *San Dieguito*, at p. 920; *Abdallah*, at p. 1111.)

Contrary to Erickson's contention, bifurcation of trial did not effect a separation of his complaint from the assigned cross-complaints so as to eliminate the court's discretion to award R.E.M. attorney fees incurred in the trial's first phase. Indeed, as the December 2003 Judgment notes, the court had made a pretrial order that "the jury's findings on negligence, strict liability and causation in the first trial phase would be determinative of those of issues of fact as they related to the assigned [cross-complaints] in the second trial phase" and that "the second trial phase, if necessary, would relate to any unresolved issues of fact and law with regard to the assigned" cross-complaints. The court had also ruled a showing by Erickson of fault on the part of R.E.M. was necessary to trigger its liability under the indemnity provisions of the assigned subcontracts that formed the basis of the cross-complaint's express indemnity claims. Further, with respect to the amount of indemnity Erickson might be entitled to recover, Erickson needed to prove the reasonableness of allocated sums allegedly paid in settlement by Brehm and YLR for the alleged defects in R.E.M.'s work or products. (*Peter Culley & Associates v. Superior Court* (1992) 10 Cal.App.4th 1484, 1498 [13 Cal.Rptr.2d 624].) To establish such reasonableness, evidence of the cost of repairing the alleged defects would be relevant. (*Heppler*, *supra*, 73 Cal.App.4th at p. 1284.) Moreover, ample evidence supported the trial court's determinations bearing on the amount of the attorney fee award.

In seeking attorney fees, R.E.M. submitted Attorney Lucas's firm's itemized billing statements for R.E.M.'s defense in this case. R.E.M. also submitted Lucas's declarations asserting that (1) the only operative causes of action in the assigned cross-complaints were those sounding in express contractual indemnity; (2) except for specified legal services totaling $625, the attorneys in Lucas's firm who worked on this case attended only those depositions/hearings and performed only those services that Lucas believed would affect R.E.M.'s defense against the express indemnity actions in the assigned cross-complaints; (3) very few billing entries by Lucas's firm could be identified as "uniquely reflective" of the direct claims against R.E.M. added to Erickson's complaint in January 2003; (4) if R.E.M. had proceeded after January 2003 only as a cross-defendant on the cross-complaints, there

would have been no change in the witnesses deposed, the records reviewed, the discovery performed or the facts litigated at trial; (5) the actual net effect of the assignment of the cross-complaints to Erickson in conjunction with the amendment of his complaint to sue R.E.M. directly was not to increase, but instead to reduce, R.E.M.'s overall attorney fees because Lucas's firm no longer had to depose Brehm/YLR experts and the trial was shortened considerably since those experts and Brehm/YLR attorneys were not participants; (6) the effect of bifurcation of trial was that the pivotal issues as to R.E.M.'s fault for Erickson's damages that would trigger an express indemnity obligation were tried in the trial's first phase; (7) had the second phase of trial proceeded, it would primarily have involved proving the alleged indemnity damages as well as issues relating to standing and contractor licensing; and (8) bifurcation of those remaining express indemnity issues lessened R.E.M.'s costs and fees because they did not have to be addressed in a single trial of all issues.

Initially, R.E.M. sought $114,618.96 attorney fees and defense costs, consisting of (1) $54,312.50 attorney fees incurred through August 20, 2003; (2) $937.50 attorney fees related to R.E.M.'s motion for attorney fees and costs; and (3) $59,368.96 costs to the extent not separately awarded. Later, R.E.M. presented Attorney Lucas's supplemental declaration asserting that (1) in response to the court's directive of October 17, 2003, he reviewed his file and his firm's previously submitted billing statements for purposes of identifying those fees that were exclusively related to R.E.M.'s defense against the assigned cross-complaints and excluding billings related to the defense on issues common to the claims in Erickson's complaint's direct action and the claims in the cross-complaints; (2) $9,901.75 attorney fees were identified as exclusively related to R.E.M.'s defense against the cross-complaints; and (3) R.E.M. would be billed at least another $1,125 in addition to the sums previously requested in connection with its attorney fee motion.

■ Based on that evidentiary showing, the trial court could reasonably find that Erickson's various claims against R.E.M. were " ' "inextricably intertwined" ' [citation], making it 'impracticable, if not impossible, to separate the multitude of conjoined activities into compensable or noncompensable time units.' " (*Abdallah, supra,* 43 Cal.App.4th at p. 1111.) Because Erickson's tort theories and R.E.M.'s defense to Erickson's contractual theories were interrelated as raising common issues requiring virtually identical evidence, the challenged nonapportionment of the attorney fee award was within the court's discretion. (*Reynolds, supra,* 25 Cal.3d at pp. 129–130; *San Dieguito, supra,* 61 Cal.App.4th at p. 920; *Abdallah,* at p. 1111.) Erickson has not identified anything in the record compelling a contrary result. Indeed, by

not including in the record a reporter's transcript of the testimony and other evidence introduced at trial, Erickson has failed to present an evidentiary record sufficient to show the trial court abused its discretion by not apportioning the attorney fee award to exclude fees incurred in defense of issues common to Erickson's complaint and the assigned cross-complaints or by otherwise reversibly erring with respect to the amount of the attorney fees awarded to R.E.M. "Once we determine the trial court's findings have the requisite measure of support in the record, we cannot substitute our conclusions for those of the trial court." (*Heppler, supra,* 73 Cal.App.4th at p. 1291.)

 In sum, contrary to Erickson's contentions, the assigned cross-complaints' express indemnity claims were not tried entirely separate from his complaint. Instead, various common issues were tried concurrently. Further, the tort issues litigated in the trial's first phase, including R.E.M.'s negligence, causation and damages, were determinative of the express indemnity claims. Accordingly, the trial court acted within its discretion by awarding R.E.M. attorney fees incurred in litigating those common issues relevant to the assigned cross-complaints. (*Reynolds, supra,* 25 Cal.3d at pp. 129–130; *San Dieguito, supra,* 61 Cal.App.4th at p. 920; *Abdallah, supra,* 43 Cal.App.4th at p. 1111.)

B

*Erickson Was Obligated for Attorney Fees As YLR's Assignee*

The trial court concluded that although the language assigning the subcontracts of Brehm and YLR to Erickson differed slightly, each assigned the rights and obligations of the subcontractual attorney fee provisions; Brehm's assignment provided that Erickson assumed all risks and adverse consequences of the attorney fee clause if he did not prevail; YLR's assignment stated YLR assigned the right to obtain attorney fees and costs from nonsettling defendants from December 20, 2002, and YLR retained all other aspects of the attorney fee clauses.

Erickson contends he did not automatically assume liability for R.E.M.'s attorney fees by virtue of YRL's assignment to him of its subcontract containing an attorney fee clause. Instead, according to Erickson, the question whether the assignment effected his assumption of YLR's subcontractual attorney fee obligation was for the court's determination based on evidence of the parties' intent as manifested by their acts, the subcontract's subject

matter or the parties' words. (*Heppler, supra,* 73 Cal.App.4th at pp. 1288–1290.) Erickson contends the language of the assignment indicated he did not assume attorney fee liability from YLR. Specifically, Erickson characterizes the language as assigning "only a portion of the attorneys' fees clause" and providing YLR "shall retain all other aspects of the attorneys' fees clauses."

■ Erickson does not challenge the language of Brehm's assignment to him.[12] On the contrary, Erickson contends "such language is conspicuously absent" from YLR's assignment language. However, the absence of express language in YLR's assignment that indicated Erickson was accepting reciprocal liability for attorney fees if he did not prevail in the action did not preclude the court from properly determining Erickson's reciprocal obligation to pay attorney fees under section 1717 was part of YLR's assignment as a matter of law. (*Heppler, supra,* 73 Cal.App.4th at pp. 1289–1292.) Further, absent evidence showing the parties did not intend to transfer to Erickson the attorney fee obligations of YLR's subcontract with R.E.M., assumption of such obligations may properly be implied by Erickson's acceptance of the benefits of that subcontract. (*Id.* at pp. 1289–1290.)

By virtue of YLR's assigning him its subcontract with R.E.M., Erickson became the owner of YLR's indemnity rights and was "completely in charge of the litigation." (*Heppler, supra,* 73 Cal.App.4th at p. 1290.) Erickson "chose" to pursue prevailing nonsettling subcontractor R.E.M. "through trial." (*Ibid.*) Erickson "had the option to settle" with R.E.M. "without incurring attorney fee obligations . . . , but chose not to." (*Ibid.,* citing § 1717, subd. (b)(2).) Erickson "also had the power to dismiss" the cross-complaint against R.E.M. and "avoid any obligation for attorney fees. This is so because unless the cross-complaint went to judgment there would be no prevailing party within the meaning of" section 1717 and "no one would have the right to recover attorney fees under" the subcontract. (*Heppler,* at pp. 1290–1291.)

In sum, "the moment" Erickson "took the assignment," he "had total control of the litigation." (*Heppler, supra,* 73 Cal.App.4th at p. 1291.) Erickson was "primed to take the benefits of an award of attorney fees" if he "won; thus, it was reasonable for the court to infer" Erickson was "prepared to take the concomitant obligation to pay attorney fees under" section 1717 if he "lost." (*Heppler,* at p. 1291.) Accordingly, the trial court properly determined that under the assignment of YLR's subcontract, Erickson incurred the subcontractual obligations for attorney fees. (*Id.* at pp. 1289–1290.)

---

[12] Brehm's assignment to Erickson stated: "By virtue of accepting such assignment, Plaintiffs expressly assume the risk of any adverse consequences to Brehm Entities of such assignment, including, but not limited to, any award of attorneys' fees or costs to said subcontractors, as a result of prosecution of the litigation."

## IV

## DISPOSITION

The motion to dismiss the appeal is denied. The judgment is affirmed.

Huffman, Acting P. J., and O'Rourke, J., concurred.

On February 14, 2005, the opinion was modified to read as printed above.