[No. A071355. First Dist., Div. Two. Nov. 19, 1996.]

CC-CALIFORNIA PLAZA ASSOCIATES, Cross-complainant and Appellant, v.
PALLER & GOLDSTEIN, Cross-defendant and Appellant.

COUNSEL

Bowles & Verna, Richard T. Bowles and Kenneth B. McKenzie for Cross-complainant and Appellant.

Boornazian, Jensen & Garthie, Brenda M. Lillington and David R. Sidran for Cross-defendant and Appellant.

OPINION

HAERLE, J.—

## I. INTRODUCTION

These are two appeals from litigation involving alleged defective construction on a Walnut Creek office building. In one appeal, the owner of the building and the plaintiff below, CC-California Plaza Associates (Cal Plaza), appeals from a judgment entered after the trial court granted a nonsuit against it and in favor of the defendant subcontractor on the project, Paller & Goldstein (Paller). Via separate moving papers, Paller moves to dismiss that appeal as untimely. In the second appeal, Paller appeals from the trial court's postjudgment order denying it attorneys' fees for prevailing on its nonsuit motion. We deny the motion to dismiss and reverse the judgment. We do not, therefore, reach the issue presented by Paller's cross-appeal.

## II. FACTUAL AND PROCEDURAL BACKGROUND

These appeals arise out of the construction of the California Plaza office building in Walnut Creek. In September 1983, Dillingham Construction N.A., Inc. (Dillingham) entered into a contract with Cal Plaza, the building

owner, to construct a 10-story office building on North California Boulevard in Walnut Creek. The overall contract price was in excess of $26 million.

After completion of construction, it was observed that there were numerous leaks during rainy weather. One such alleged source of water intrusion was the parapet cap assembly. Paller was the fabricator/installer of the flashing used on the parapet caps. Cal Plaza filed suit against Dillingham in July of 1991 and Dillingham responded with, among other things, a cross-complaint for indemnity in October 1991 against Paller. Dillingham filed an amended cross-complaint in December of 1991. Both cross-complaints alleged causes of action for contractual and equitable indemnity against Paller.

In 1995,[1] on the eve of trial, a global settlement was entered into by all of the parties except Cal Plaza and Paller. As a part of this settlement, Dillingham assigned its rights of indemnity against Paller to Cal Plaza. As such an assignee, Cal Plaza prosecuted Dillingham's indemnity claims against Paller at a trial commencing on April 24. Two days later, after opening statements and testimony from two witnesses for Cal Plaza, the trial court verbally granted Paller's motion for a nonsuit; its order was reduced to a judgment which was filed on May 19.

After entry of that judgment, Paller moved for entry of an order allowing it attorneys' fees based on a provision of the contract between Dillingham and Paller. After a hearing on that motion on June 30, the trial court denied Paller's motion.

Meanwhile, on May 23, Paller had given notice of entry of the May 19 judgment. Subsequent to that notice, Dillingham appeared and moved to have the court enter a corrected judgment showing Cal Plaza, rather than Dillingham, as the losing party on the judgment of nonsuit. The court verbally granted the motion and ordered the previous judgment to be changed to reflect entry of judgment against Cal Plaza, as Dillingham's assignee. Although substitute orders were submitted by both Dillingham and Cal Plaza following the hearing on this motion (also on June 30), the trial court delayed signing either proposed order for several months. It eventually entered Dillingham's proposed "Corrected Judgment" on October 6.

Paller filed a notice of appeal from the denial of its motion for attorneys' fees on August 25. Cal Plaza filed a notice of appeal from the judgment of nonsuit on September 14.

---

[1]All dates noted hereafter are in 1995.

### III. Discussion

As briefed by the parties, this case presents three[2] issues: (1) whether the appeal by Cal Plaza from the judgment of nonsuit was timely, (2) the merits of Cal Plaza's appeal from the judgment of nonsuit, and (3) Paller's appeal from the trial court's order denying it attorneys' fees for prevailing on the nonsuit motion. We shall deal with the first two issues only, as our disposition of the second issue renders the third moot.

#### A. *Paller's Motion to Dismiss Cal Plaza's Appeal*

 Paller has moved this court to dismiss Cal Plaza's appeal from the judgment of nonsuit against it on the basis that that appeal was not timely filed under the rules on appeal. It points out that Cal Plaza's "Notice of Appeal/Cross-Appeal" was filed on September 14, considerably more than 60 days after notice of entry of judgment was given (on May 23) of the May 19 judgment of the trial court nonsuiting Cal Plaza. It also urges that Cal Plaza's appeal cannot properly be deemed a cross-appeal from Paller's August 25 notice of appeal from the trial court's postjudgment order denying it attorneys' fees.

Paller is correct that Cal Plaza's appeal is not properly a cross-appeal but it is incorrect that Cal Plaza's appeal is untimely.

On the cross-appeal issue, the governing provision is, of course, rule 3(c) of the California Rules of Court. Under this rule, however, an appeal from a postjudgment order denying attorneys' fees does not reopen the time for appealing from the underlying judgment. That was exactly the issue before, and exactly the holding of, the court in *Commercial & Farmers Nat. Bank* v. *Edwards* (1979) 91 Cal.App.3d 699, 704-705 [154 Cal.Rptr. 345]. It stated: "The contention of [appellants] is that when Edwards filed his notice of appeal from the order denying attorney fees, the first sentence of rule 3(c) gave them a new 20-day period within which to appeal from the judgment. This contention must fail because the first sentence of subdivision (c) only reopens the time for another appeal from the same order or judgment as the first appeal. Both the structure of rule 3, and the purpose of the 1970 amendment indicate this is the proper interpretation. [¶] . . . If the courts were to adopt the interpretation urged by [appellants]—that the filing of an appeal from a postjudgment order reopens the time for appealing from the judgment—the finality of judgments would be undermined significantly."

---

[2]Paller has also requested sanctions against Cal Plaza in connection with various alleged inadequacies with respect to the record on appeal. We deny the requested sanctions.

(See also *Fundamental Investment etc. Realty Fund* v. *Gradow* (1994) 28 Cal.App.4th 966, 976-979 [33 Cal.Rptr.2d 812].)

But, Paller continues, if that is the case then Cal Plaza's September appeal of the trial court's May judgment of nonsuit must necessarily be fatally tardy. It is not, Cal Plaza responds, because of the substantial change effected by the trial court's October "Corrected Judgment."[3] As noted above, the May judgment entered by the trial court was "in favor of cross-defendant PALLER & GOLDSTEIN and against Cross-Complainant DILLINGHAM CONSTRUCTION, N.A., INC." No mention was made anywhere in the text of the judgment of the party against whom the judgment was *really* entered—Cal Plaza.[4] Again as noted above, the error was called to the trial court's attention by Dillingham; eventually, on October 6, the trial court corrected the error by signing and filing a "Corrected Judgment" which made clear that the losing party was Cal Plaza and not Dillingham.

The issue then becomes: When does the time for filing a notice of appeal commence to run in a case where there has been a change in the form of judgment? As might be expected, the answer depends on how material a change is involved. The rule has been accurately summarized by the leading text on such matters as follows: "The effect of an amended judgment on the appeal time period depends on whether the amendment substantially changes the judgment or, instead, simply corrects a clerical error: . . . When the trial court amends a nonfinal judgment in a manner amounting to a *substantial modification* of the judgment (e.g., on motion for new trial or motion to vacate and enter different judgment), the amended judgment supersedes the original and becomes the appealable judgment (there can be only one 'final judgment' in an action; ¶2:21). Therefore, a new appeal period starts to run from notice of entry or entry of the *amended* judgment. . . . On the other hand, if the amendment merely corrects a *clerical error* and does not involve the exercise of judicial discretion, the original judgment remains effective as the only appealable final judgment; the amendment does *not* operate as a new judgment from which an appeal may be taken." (Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs (The Rutter Group 1995) ¶¶ 3:56 to 3:56.2, pp. 3-19 to 3-20, and cases cited therein; see also *Dickens* v. *Lee* (1991) 230 Cal.App.3d 985, 987, fn. 1 [281 Cal.Rptr. 783].)

The parties disagree as to whether the change between the May and October judgments is "substantial" or merely "clerical." To us the issue is

---

[3]Paller has withdrawn any contention that Cal Plaza's September appeal was premature as to the October "Corrected Judgment."

[4]Curiously, the only mention of Cal Plaza in this document is in the masthead, which reveals that it was prepared by Cal Plaza's counsel.

relatively easy; we cannot imagine a more substantial or material change in the form of a judgment than in the identity of the losing party. According to the May judgment, for all intents and purposes it was Dillingham that had litigated and lost the issue of Paller's liability for the leaky parapets. But this was clearly not correct; it was Cal Plaza that had done so and was hence subject to whatever legal consequences flowed from being the losing party in a lawsuit, e.g., costs.[5] Thus, it was hardly a mere "clerical" correction when, in October, the trial court changed the judgment to reflect the correct name of the losing party on the nonsuit motion.

Paller's motion to dismiss Cal Plaza's appeal is denied.

### B. Cal Plaza's Appeal From the Judgment of Nonsuit

■ Following opening statements to the jury and the testimony of one expert witness and the partial testimony of another witness, the trial court granted Paller's motion for nonsuit. This motion had two bases, and the trial court ruled in favor of Paller on both. First, Paller urged that a verified answer filed by Dillingham to a request for admission served on it by Paller precluded Cal Plaza, as assignee of Dillingham, from claiming that the parapet sealing work was not in accordance with the architect's specifications which required, among other things, that the sealing be "watertight." Second, Paller urged that Dillingham had sustained no damages recoverable by its assignee, Cal Plaza, as a result of Paller's failure to defend and indemnify Dillingham. We disagree with the trial court's rulings on both bases and hence we reverse the judgment of nonsuit.

#### 1. Nonsuit Should Not Have Been Granted on the Basis of Dillingham's Answer to Paller's Request for Admission

The issue involving the request for admission implicates two such requests and the responses provided to them. The requests were filed by Paller in January and Dillingham filed answers in March, a month before the scheduled trial. The pertinent requests and answers were as follows:

"REQUEST No. 16:

"That installation of the parapet cap flashing at California Plaza is in accordance with the architect's specifications.

---

[5]Indeed, Cal Plaza opposed Dillingham's motion to correct the judgment, contending, inter alia, that "it had never exercised its option to appear *in place* of DILLINGHAM as the party of record . . . ."

"RESPONSE TO REQUEST NO. 16:

"Admitted.

"REQUEST NO. 17:

"That parapet cap flashing at California Plaza was not negligently installed.

"RESPONSE TO REQUEST NO. 17:

"Denied."[6]

The trial court ruled that the verified answer given by Dillingham to request No. 16 foreclosed Cal Plaza, as its assignor, from litigating the issue of whether Paller was in any way responsible for the leaks. We disagree. This is not, as Paller would have it, simply an issue of a trial court denying a party the right to "amend" a response to a request for admission, something that we agree would be governed by an abuse of discretion standard of review. Because, among other things, evidence was adduced before the jury on this issue, what is implicated here is the much stricter standard of review applicable to the grant of judgments of nonsuit.

As Witkin emphasizes, an order of nonsuit "may be made only when there is *no substantial conflict in the evidence*. In ruling on the motion, the court *does not consider credibility of witnesses* but gives to the evidence of the party against whom it is directed *all its legal value*, indulges every legitimate *inference* from such evidence in favor of that party, and *disregards conflicting evidence*." (7 Witkin, Cal. Procedure (3d ed. 1985) Trial, § 409, p. 412, italics in original.) This rule has been in effect in this state for a very long time. As stated in the still leading case of *Estate of Lances* (1932) 216 Cal. 397 [14 P.2d 768]: "It has become the established law of this state that the power of the court to direct a verdict is absolutely the same as the power of the court to grant a nonsuit. A nonsuit or a directed verdict may be

---

[6]Cal Plaza contends in its briefs that, in addition to the response to request No. 17, additional uncertainty as to the proper interpretation of Dillingham's response to No. 16 was ingendered by Dillingham's responses to several contention interrogatories served on it by Paller. However, because (a) these responses were not verified, and (b) of our conclusion as to the applicable standard of review in view of the evidence admitted by the trial court, we need not and do not reach this issue.

granted 'only when, *disregarding conflicting evidence and giving to plaintiff's evidence all the value to which it is legally entitled, herein indulging in every legitimate inference which may be drawn from that evidence,* the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff if such a verdict were given.' [Citations.] Unless it can be said as a matter of law, that, when so considered, no other reasonable conclusion is legally deducible from the evidence, and that any other holding would be so lacking in evidentiary support that a reviewing court would be impelled to reverse it upon appeal, or the trial court to set it aside as a matter of law, the trial court is not justified in taking the case from the jury. . . . In other words, the function of the trial court on a motion for directed verdict is analogous to and practically the same as that of a reviewing court in determining, on appeal, whether there is evidence in the record of sufficient substance to support a verdict." (*Id.* at pp. 400-401, italics added.) Thus, the power of a court to pass on motions for nonsuit is "strictly limited." (*Id.* at p. 401; *Shapiro* v. *Hu* (1986) 188 Cal.App.3d 324, 334 [233 Cal.Rptr. 470]; see also *Hauter* v. *Zogarts* (1975) 14 Cal.3d 104, 110 [120 Cal.Rptr. 681, 534 P.2d 377, 74 A.L.R.3d 1282].)

The admission by Dillingham to Paller's request for admission No. 16, an admission admittedly binding on Cal Plaza as Dillingham's assignee, established that Paller followed the architect's specifications regarding the installation of the parapet cap flashing. One of these specifications was, as Paller repeatedly pointed out to the trial court, that the flashing had to be "weather tight." The trial court incorrectly concluded, particularly in view of the evidence which was introduced the day before, that there was no other way in which Paller might have been negligent or breached its contract.

The trial court to the contrary, the evidence before it and jury clearly permitted the inference that Paller might have breached its subcontract in specifics unrelated to whether the "parapet cap flashing" was installed in a "weather tight" manner. For example, on the day before it granted Paller's motion for a nonsuit, the court and jury heard extensive testimony form a Cal Plaza expert witness, one Bradford Johanson, a consultant specializing in advising architects and builders on the exteriors of commercial buildings. Johanson, who was qualified as an expert on the type of work Paller did on Cal Plaza's building, testified that, contrary to applicable industry standards, Paller neglected to seal bolt hole penetrations left by the subcontractor that had installed the hand railings. Johanson specifically testified that his inspection revealed a total absence of any caulking of the bolt hole penetrations. This was, as Cal Plaza points out, an industry practice issue separate and

apart from the issue of the proper installation of the "parapet cap flashing." At the time this evidence was adduced, Paller's counsel objected on the ground that it contradicted Dillingham's admission, but the trial court overruled that objection on the ground that the proferred testimony went to the "workmanship" utilized by Paller as distinguished from compliance with architect's specifications, and hence was admissible. That ruling was, in our view, clearly correct. The evidence allowed in as a consequence of that ruling (and other testimony supplied by Johansen) clearly amounts to "conflicting evidence," in this case evidence of other negligence or breach (i.e., aside from the adequacy of the parapet flashing installation) from which the jury might have concluded that the leaks were Paller's fault.

The trial court's ruling that Dillingham's answer to request No. 16 justified nonsuiting Cal Plaza was incorrect.

2. *Cal Plaza Should Have Been Permitted to Prove Dillingham's Damages Resulting From Breach of the Indemnity Clause*

The trial court also granted nonsuit on the ground that Dillingham's assigned indemnity rights had "no value because there can't be any proof of damages." In so ruling, the trial court relied upon *Peter Culley & Associates v. Superior Court* (1992) 10 Cal.App.4th 1484 [13 Cal.Rptr.2d 624] (*Culley*). The trial court reasoned that, under *Culley*, "if there is no presumption of either negligence and/or damages, that there are no damages."

We begin by observing that neither party defends the reasoning of the trial court's decision. Cal Plaza contends that the trial court misinterpreted *Culley*; Paller urges that *Culley* is simply inapplicable to the facts of this case. We agree with Cal Plaza.

In *Culley*, the developer of a condominium project, Park Hill, entered into a settlement with the project architect, Kaplan. Of the aggregate $250,000 settlement amount, the parties allocated $200,000 to the allegedly defective foundation design provided by Culley. As part of the settlement, Kaplan assigned its contractual indemnity rights against Culley to Park Hill. (*Culley, supra*, 10 Cal.App.4th at pp. 1489-1490.)

After determining what type of indemnity agreement had been assigned, the *Culley* court analyzed the effect of the settlement on the assigned rights. The court concluded that, when an indemnitee settles without trial, "the

indemnitee must show the liability was covered by the contract, that liability existed, and the extent thereof. The settlement is presumptive evidence of liability of the indemnitee and of the amount of liability, but it may be overcome by proof from the indemnitor that the settlement was unreasonable (e.g., unreasonable in amount, entered collusively or in bad faith, or entered by an indemnitee not reasonable in the belief that he or she had an interest to protect)." (*Culley, supra,* 10 Cal.App.4th at p. 1497.)[7]

The *Culley* court then turned to the question of what effect to give the agreed allocation of settlement funds. The court determined that, because neither party had a motivation to allocate anything other than a high amount to Culley's liability, the "allocation should be given no special treatment in an indemnity action." (*Culley, supra,* 10 Cal.App.4th at p. 1499.) Rather, because the allocation gave rise to no presumption, "[p]laintiff should be required to prove the reasonableness of its proposed allocation by ordinary means." (*Id.* at p. 1498.)

We find no principle in this case to support a ruling depriving Cal Plaza of its right to prove its assigned indemnity claim at trial. Indeed, we are convinced that *Culley* (appropriately) supports the opposite conclusion.[8]

Paller contends that the nonsuit was nevertheless properly granted for the reason it advanced below, i.e., the indemnity clause at issue was one against

---

[7]Paller correctly observes that *Culley* does not involve a settlement or stipulated judgment combined with a covenant not to execute. While Paller raises this issue, neither party adequately briefs its importance to the present case. We conclude, however, that the distinction is unimportant for purposes of evaluating the propriety of the nonsuit. As Justice Croskey recently wrote in considering the viability of a claim against an insurer that was assigned in a settlement to the plaintiff by the insured in exchange for a covenant not to execute: "While the fact that a covenant not to execute was given . . . might bear circumstantially upon the validity or bona fides of the settlement, its presence can hardly make the judgment [settlement] disappear. The critical question will still remain: was the settlement reasonable and free of fraud or collusion? It is upon the resolution of that issue that plaintiff's case will depend." (*Pruyn* v. *Agricultural Ins. Co.* (1995) 36 Cal.App.4th 500, 522 [42 Cal.Rptr.2d 295].) This is the same analysis required by *Culley.*

[8]Paller's attempt to distinguish *Culley* on the ground that Dillingham never stipulated to its own liability as part of its settlement with Cal Plaza is specious. According to the settlement agreement: Dillingham's contract included providing flashing; Dillingham subcontracted the work to Paller; Paller's work was deficient and/or defective. It is axiomatic that "[b]ecause the prime contractor has assumed responsibility to the owner for completion of the entire project in conformance with the drawings and specifications, a subcontractor's defective performance will place the contractor in breach of the agreement." (Acret, Attorney's Guide to California Construction Contracts and Disputes (Cont.Ed.Bar 2d ed. 1990) § 3.72, p. 200.)

loss, not liability, and therefore the absence of any "payment" to Cal Plaza defeats the assigned indemnity claim under Civil Code section 2778, subdivision 2.[9] We conclude that Paller's argument is based upon an incorrect characterization of the indemnity clause.

The indemnity clause provides: "Subcontractor shall indemnify, defend and save harmless Contractor from and against any and all claims, debts, demands, damages . . . judgments, awards, losses, liabilities, interest, attorneys' fees, costs and expenses of whatsoever kind or nature at any time arising out of any failure of Subcontractor to perform any of the terms and conditions of this subcontract . . . or claimed to be caused or occasioned by, or contributed to, by any act, omission, fault or negligence, whether active or inactive of Subcontractor . . . in connection with or incident to the work . . . unless the same be caused by the sole negligence or willful misconduct of Contractor . . . . Subcontractor will on request and at its expense defend any action suit or proceeding arising hereunder and shall reimburse and pay Contractor for any loss, cost, damage or expense (including legal fees) suffered by it hereunder."

Contrary to Paller's claim, the indemnity clause explicitly provides for defense and indemnity against *both* liabilities and claims. While Paller cites authority explaining the differences between indemnity against liability and loss, it cites none holding that an indemnity clause that expressly provides indemnity for liability must be construed as a contract of indemnity against loss under Civil Code section 2778, subdivision 2. In the absence of plausible authority mandating such a conclusion, we decline to interpret the indemnity clause contrary to its express terms. The indemnity clause in question properly falls under Civil Code section 2778, subdivision 1; as a consequence, "payment" was not required prior to seeking indemnification.[10]

The trial court erred in granting nonsuit on the ground that Dillingham suffered no damages.

---

[9]Civil Code section 2778, subdivisions 1 and 2 provides:
"1. Upon an indemnity against liability, expressly, or in other equivalent terms, the person indemnified is entitled to recover upon becoming liable;
"2. Upon an indemnity against claims, or demands, or damages, or costs, expressly, or in other equivalent terms, the person indemnified is not entitled to recover without payment thereof . . . ."

[10]In light of our determination that the indemnity clause in question is governed by Civil Code section 2778, subdivision 1, we need not address the argument that right to attorneys' fees assigned by Dillingham to Cal Plaza constituted "payment" sufficient to satisfy the requirement of Civil Code section 2778, subdivision 2.

## IV. Disposition

The motion to dismiss the appeal is denied. The judgment of nonsuit is reversed and the case remanded to the trial court for further proceedings consistent with this opinion. Costs on appeal are awarded to appellant.

Kline, P. J., and Lambden, J., concurred.

The petition of appellant Paller & Goldstein for review by the Supreme Court was denied March 12, 1997.