[No. F050440. Fifth Dist. Mar. 2, 2007.]

COUNTY OF KERN, Plaintiff and Appellant, v.
CARL SPARKS, Defendant and Respondent.

**COUNSEL**

Kuhs & Parker, William C. Kuhs and Robert G. Kuhs for Plaintiff and Appellant.

Bill Lockyer, Attorney General, Tom Green, Chief Assistant Attorney General, Christopher M. Ames, Assistant Attorney General, Larry G. Raskin and Sangeetha M. Raghunathan, Deputy Attorneys General, for California Attorney General as Amicus Curiae on behalf of Plaintiff and Appellant.

Law Offices of Jones & Mayer, Paul R. Coble and Dean J. Pucci for Defendant and Respondent.

**OPINION**

**LEVY, Acting P. J.**—Appellant, the County of Kern (County), filed the underlying action against respondent, retired Kern County Sheriff Carl Sparks, for violation of the False Claims Act (Gov. Code,[1] § 12650 et seq.) and negligent misrepresentation. The County alleged that Sparks falsely certified sheriff's department payrolls resulting in certain employees receiving unauthorized premium pay adjustments. At the conclusion of the County's case-in-chief, the trial court granted Sparks's motions for nonsuit and a directed verdict.

The County contends the trial court erred. According to the County, there was sufficient evidence to support a verdict in its favor.

As discussed below, giving the County's evidence all the value to which it is legally entitled, and indulging in every legitimate inference that may be drawn from the evidence, it must be concluded that the nonsuit/directed verdict motions should not have been granted as to the false claims cause of action. Sparks did not have the authority to give premium pay to a commander, and a reasonable jury could infer from the County's evidence that Sparks acted recklessly when certifying that this unauthorized premium pay

---

[1] All further statutory references are to the Government Code unless otherwise indicated.

was proper. However, as a public employee acting in the scope of his employment, Sparks is immune from liability for negligent misrepresentation. Accordingly, the judgment will be reversed in part and affirmed in part.

## BACKGROUND

Sparks served as the County's elected sheriff from January 1991 until he retired in January 2003.

The Kern County Sheriff's Department (Department) employs sworn peace officers and civil servants. The sworn peace officers include deputies, senior deputies, sergeants, commanders, assistant sheriffs, and the sheriff. The positions of deputy, senior deputy and sergeant are nonexempt positions. The positions of commander, assistant sheriff and sheriff are exempt positions, i.e., not subject to the provisions of the Fair Labor Standards Act of 1938 (29 U.S.C. § 201 et seq.). The sheriff and the assistant sheriffs are the top management positions. Commander is classified as a midmanagement position.

With respect to compensation, the deputies, senior deputies and sergeants are covered by a memorandum of understanding (MOU) negotiated with the County. The wages for management, midmanagement, and confidential employees are established from time to time by the County through the board of supervisors (Board).

County employees are paid every two weeks. For exempt employees, a department head must certify that the payroll is proper. This means "that the employee would be legally entitled to what he is being paid." Special pay allowances may be added for current employees on a Change of Employment Status (CES) form.

The MOU's provide for several types of special pay for covered employees. Such "premium pay" includes: standby pay for safety employees in the homicide, search and rescue and air units; special weapons and tactics team (SWAT) physical fitness pay; bomb detail pay; and SWAT uniform pay.

During his 12 years as sheriff, Sparks authorized the Department to process CES's to give premium pay to seven commanders at various times. The first time this occurred was in June 1997 when a commander's pay was adjusted to include SWAT physical fitness pay. However, commanders were not covered employees under any MOU. Rather, their compensation was specified in Board letters that did not authorize any premium pay.

The current sheriff, Mack Wimbish, took office in January 2003. Wimbish was informed that four commanders were currently receiving unauthorized premium pay and so advised the Board. The premium pay was stopped shortly thereafter.

The County filed the underlying complaint against Sparks seeking to recover $39,000 in allegedly unauthorized premium pay approved by Sparks. At the time of trial, the complaint stated causes of action for violation of the False Claims Act (§ 12650 et seq.) and negligent misrepresentation.

A jury was sworn and trial commenced. At the conclusion of the County's case-in-chief, Sparks moved for a directed verdict and a nonsuit. The trial court granted both motions.

## DISCUSSION

1. *Standard of review.*

■ A nonsuit motion tests the sufficiency of the plaintiff's evidence before the defense is presented. (*Carson v. Facilities Development Co.* (1984) 36 Cal.3d 830, 838 [206 Cal.Rptr. 136, 686 P.2d 656].) The granting of a nonsuit motion is warranted when, disregarding conflicting evidence, giving plaintiff's evidence all the value to which it is legally entitled, and indulging in every legitimate inference that may be drawn from the evidence, the trial court determines that there is no sufficiently substantial evidence to support a verdict in plaintiff's favor. (*Kidron v. Movie Acquisition Corp.* (1995) 40 Cal.App.4th 1571, 1580 [47 Cal.Rptr.2d 752].) In other words, the function of the trial court is analogous to, and practically the same as, that of a reviewing court in determining, on appeal, whether there is evidence in the record of sufficient substance to support a verdict. (*CC-California Plaza Associates v. Paller & Goldstein* (1996) 51 Cal.App.4th 1042, 1051 [59 Cal.Rptr.2d 382].) Similarly, on appeal from the granting of a nonsuit, the reviewing court must resolve every conflict in the testimony in favor of the plaintiff and at the same time indulge in every presumption and inference that could reasonably support the plaintiff's case. (*Jones v. Ortho Pharmaceutical Corp.* (1985) 163 Cal.App.3d 396, 402 [209 Cal.Rptr. 456].) The same standard also applies to a motion for a directed verdict. (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 629 [85 Cal.Rptr.2d 386].)

2. *Sparks did not have independent authority to give premium pay to a commander.*

■ Under the California Constitution, the governing body of each county provides for the compensation of its employees. (*County of Riverside v. Superior Court* (2003) 30 Cal.4th 278, 285 [132 Cal.Rptr.2d 713, 66 P.3d

718].) Thus, here, it was up to the Board, not Sparks, to set the salary for a commander.

As noted above, the Board authorized premium pay for deputies, senior deputies and sergeants under an MOU. However, the MOU did not cover commanders. Rather, absent a special order of the Board, a commander's salary is in full satisfaction of all services rendered to the County by that commander. Thus, Sparks did not have the authority to unilaterally order premium pay for a commander even though that employee would have been entitled to such pay if he or she were employed as a deputy, senior deputy or sergeant.

### 3. *The False Claims Act is applicable to the conduct at issue.*

The False Claims Act permits the recovery of civil penalties and treble damages from any person who "[k]nowingly presents or causes to be presented to . . . the state or . . . any political subdivision thereof, a false claim for payment or approval." (§ 12651, subd. (a)(1).) " 'Claim' includes any request or demand for money . . . made to any employee, officer, or agent of the state or of any political subdivision." (§ 12650, subd. (b)(1).) "Knowingly" includes actual knowledge of the information or deliberate ignorance of the truth or falsity of the information. However, a claim is also "knowingly" presented when a person "[a]cts in reckless disregard of the truth or falsity of the information. [¶] Proof of specific intent to defraud is not required." (§ 12650, subd. (b)(2)(C).)

The purpose of the False Claims Act is to protect the public treasury and the taxpayer. (*State of California v. Altus Finance* (2005) 36 Cal.4th 1284, 1297 [32 Cal.Rptr.3d 498, 116 P.3d 1175].) Accordingly, the act must be construed broadly to give the widest possible coverage and effect to the prohibitions and remedies it provides. (*City of Pomona v. Superior Court* (2001) 89 Cal.App.4th 793, 801–802 [107 Cal.Rptr.2d 710].) Further, a defendant need not be a recipient or beneficiary of the false claim to be liable under the act. (*Id.* at p. 802.)

To establish liability here, the County was required to prove that Sparks requested or demanded the County to disburse County funds "knowing" that the claim was false. The County relies on two acts committed by Sparks to support its position that Sparks violated the False Claims Act. First, Sparks authorized the processing of CES's to give premium pay to commanders who were not entitled to such pay. Second, Sparks certified that the payroll was proper when it was not. The County auditor relied on these certifications and in turn made unauthorized payments from the County treasury.

These acts fall within the ambit of the statute. Requests that premium pay be disbursed by the County to employees when such pay was not authorized qualify as "false claims." Those claims caused a financial loss to the County. The fact that Sparks did not personally benefit from the claims does not relieve him of liability. Further, it is immaterial that the commanders receiving premium pay performed the extra duties. The salary received by a commander is in full satisfaction of all services rendered by that employee.

However, before the County can prevail, it must establish that Sparks "knowingly" presented these false claims. Thus, the next step is to determine whether the County's evidence in this regard was sufficiently substantial to support a verdict in its favor.

4. *The County's evidence that Sparks knowingly presented a false claim could have supported a jury verdict in its favor on the False Claims Act cause of action.*

As noted above, Sparks authorized a CES to grant premium pay to a commander for the first time in June 1997. In support of his belief that he had the authority to do so, Sparks relied on group lectures given by the attorney for the California State Sheriff's Association regarding the discretion a sheriff has with respect to the money allocated to the department. However, Sparks never requested a formal legal opinion on the scope of his authority.

Sparks's position was also based on his reading of a 1994 California Attorney General's opinion. That opinion concerned "whether a county board of supervisors may govern the actions of a sheriff or district attorney with respect to the manner in which budget allotments for those offices are expended, including issues of personnel deployment." (77 Ops.Cal.Atty.Gen. 82 (1994), fns. omitted.) The opinion concluded that a board's specific responsibility to " 'provide for the number, compensation, tenure, appointment and conditions of employment of county employees' [citation] is simply an inherent aspect of the preparation and adoption of the county's budget" and "does not encompass the management of budgetary resource allotments." (*Id.* at pp. 88–89.) "Consequently, a board's authority to provide 'conditions of employment' [citation] cannot be interpreted to confer ongoing control over the actions to be taken by personnel previously assigned to the sheriff or district attorney." (*Id.* at p. 89.) Nevertheless, the opinion does not suggest that a sheriff can spend budgeted funds for an unauthorized purpose.

Bernard Barmann is employed as county counsel and, as such, is the attorney for the Department. In the absence of a conflict, the Department is obligated to seek legal advice from county counsel's office and to follow it.

Sparks testified that sometime between 1996 and 1998 he asked Barmann about whether he had authority to give premium pay to commanders. According to Sparks, Barmann said "that if I was looking at doing premium pay for commanders, he recommended I go to the Board for their approval." At trial, Barmann testified that he did not recall this conversation.

In July 2002, Deputy County Counsel John Irby received an e-mail from Assistant Sheriff Phil Crosby regarding premium pay for commanders. Crosby informed Irby that two commanders were receiving premium pay and that the Department had several legal questions regarding the consequences of providing that pay to two more commanders. As part of his response, Irby informed Crosby that, "The Board of Supervisors must approve all salaries and components thereof in some fashion, i.e., under an MOU, an ordinance, an administrative regulation, etc. Here, so far as we understand, [premium] pay for Commanders, either already in effect or proposed, has not been approved by the Board. We recommend that the Board be informed of and asked to approve all [premium] pay to Commanders." This memo was discussed with Sparks at a staff meeting. Despite Irby's advice, Sparks authorized premium pay for two more commanders. Sparks continued to rely on the lectures given by the California State Sheriff's Association attorney and the 1994 California Attorney General's opinion.

As noted above, a person "knowingly" presents a false claim when that person "[a]cts in reckless disregard of the truth or falsity of the information." Specific intent to defraud is not required. (§ 12650, subd. (b)(2)(C).)

Here, the evidence was sufficient to support a jury verdict finding that Sparks "knowingly" presented false claims to the County. Sparks formed his own erroneous conclusion regarding the propriety of premium pay for commanders. Although that conduct in itself would not support a verdict in the County's favor, Sparks thereafter refused to change his position despite receiving contrary advice from county counsel on at least two occasions. As noted above, Sparks was obligated to follow county counsel's recommendations. Thus, when Sparks authorized premium pay and certified the payrolls without Board approval after receiving county counsel's input, a reasonable jury *could* find that he exhibited a "reckless disregard of the truth."[2] Since this court must resolve every conflict in the testimony in favor of the County and at the same time indulge in every presumption and inference that reasonably could support its case, we conclude the nonsuit/directed verdict motions should not have been granted on the False Claims Act cause of action.

---

[2] We express no opinion on whether a reasonable jury *should* make this finding.

### 5. *Sparks is immune from liability for negligent misrepresentation.*

■ "Negligent misrepresentation is the assertion of a false statement, honestly made in the belief it is true, but without reasonable ground for such belief." (*Anderson v. Deloitte & Touche* (1997) 56 Cal.App.4th 1468, 1476 [66 Cal.Rptr.2d 512].) Since the County's evidence outlined above could reasonably support a finding that Sparks "knowingly" presented a false claim, it could also support a finding that he negligently presented a false claim. Nevertheless, as a public employee, Sparks is immune from liability for this alleged tort under sections 820.2 and 822.2.

■ Section 820.2 provides that "a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Immune discretionary acts involve planning and policy making. (*Caldwell v. Montoya* (1995) 10 Cal.4th 972, 981 [42 Cal.Rptr.2d 842, 897 P.2d 1320].) However, lower level or "ministerial" decisions that merely implement a basic policy already formulated are not immunized. (*Ibid.*)

Section 822.2 provides that "[a] public employee acting in the scope of his employment is not liable for an injury caused by his misrepresentation, whether or not such misrepresentation be negligent or intentional, unless he is guilty of actual fraud, corruption or actual malice." This immunity is not absolute. It applies only when the negligent or intentional wrongdoing involves interferences with financial or commercial interests. (*Adkins v. State of California* (1996) 50 Cal.App.4th 1802, 1818 [59 Cal.Rptr.2d 59], disapproved on another point in *City of Moorpark v. Superior Court* (1998) 18 Cal.4th 1143, 1156–1158 [77 Cal.Rptr.2d 445, 959 P.2d 752].)

Sparks's conduct falls within the ambit of these statutes. His decision to increase commanders' pay involved policy making, not the implementation of an existing policy. Further, although Sparks may have exceeded his authority, his conduct was not a significant departure from his normal duties pertaining to personnel management. Accordingly, he was acting in the scope of his employment. (Cf. *Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 208–209 [285 Cal.Rptr. 99, 814 P.2d 1341]; *Jacobus v. Krambo Corp.* (2000) 78 Cal.App.4th 1096, 1101–1102 [93 Cal.Rptr.2d 425].) Moreover, there was no evidence of "actual fraud, corruption or actual malice," and the injury caused by Sparks's misrepresentation was financial. Thus, both section 820.2 and section 822.2 provide Sparks with immunity.

## DISPOSITION

The judgment on the False Claims Act cause of action is reversed. The judgment on the negligent misrepresentation cause of action is affirmed. The parties shall bear their own costs on appeal.

Gomes, J., and Hill, J., concurred.