Filed 12/22/15  Scott v. Steiner CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| DONNA SCOTT, | B258400 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SS024341) |
| v. | |
| REED STEINER et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. H. Chester Horn, Jr., Judge.  Dismissed in part and affirmed in part.

Dana M. Cole for Defendants and Appellants.

Venable, William J. Briggs, II, Schuyler B. Sorosky, Chana E. Ickowitz for Plaintiff and Respondent.

_____

Donna Scott obtained restraining orders against her neighbors, defendants Reed Steiner and Dyan Traynor, who engaged in a continuous pattern of harassing conduct designed to inflict substantial emotional distress on Scott. (Code Civ. Proc., § 527.6 (section 527.6.).) Traynor's appeal is untimely. The harassing conduct imputed to both defendants is not privileged (Civ. Code, § 47), nor is it constitutionally protected speech. We dismiss Traynor's appeal and affirm the judgment against Steiner.

## FACTS

Scott sought civil harassment restraining orders against defendants, a married couple who live next door to Scott on a cul-de-sac in Beverly Hills. Defendants opposed Scott's request, contending that their conduct was privileged. The dispute was the subject of a three-day bench trial and a lengthy memorandum of decision.[1]

The genesis of the dispute was a 1994 agreement between Donna Scott's husband Tony Scott and the former owners of defendants' property (the Agreement), which allowed the Scotts to build a wall that protruded a short distance into the cul-de-sac and encroached on a joint easement for use of the street. The wall contains a mailbox and a key pad for the gate to the Scotts' property. After her husband died in 2012, Scott began to think about moving, owing to difficult memories she and her two children associated with the house, an idea she mentioned to defendants.

On August 19, 2013, Scott's dogs were outside barking. Steiner used Scott's gate code, entered her property and put the dogs into Scott's house through the "doggy door," which he barricaded to prevent the dogs from going outdoors. Scott's housekeeper told her that she was uncomfortable with people coming onto the property. Scott left defendants a voicemail message saying that she did not want them to enter her property.

---

[1] The remainder of the facts are taken from the trial court's decision. Defendants did not provide this court with a trial transcript, so we must presume that the restraining orders are fully supported by the evidence. (*R.D. v. P.M.* (2011) 202 Cal.App.4th 181, 186, fn. 5.)

2

On August 27, 2013, Traynor asked Scott's gardener to trim five trees on Scott's property. Scott called defendants again, and requested that their concerns be addressed directly to her. This further strained relations between the parties.

In October 2013, Scott's employee was walking up the street to a dog park owned by Scott when she was confronted by Traynor, who yelled that the employee had no right to walk on the street with the dogs. Scott was rebuffed when she called to discuss this incident. Later that month, Traynor went to the office of Scott's deceased husband with a proposal that Scott either remove the wall or pay defendants $250,000. Traynor "made a scene . . . in an effort to humiliate" Scott.

Scott's attorneys wrote to Traynor in November 2013, to acknowledge receipt of the proposal and request time to survey the land to determine the extent of the encroachment. They instructed Traynor to cease contact with Scott and her employees, and to not trespass on Scott's property. Three days later, on Scott's wedding anniversary, Steiner left a voice message addressed to "Donna Wilson" (Scott's maiden name), indicating his receipt of her attorney's "'disgusting and absurd letter,'" telling her she was "'ridiculous'" and added, "'say hi to Tony,'" plaintiff's deceased husband. The court found that the only logical explanation of this message was to alarm and cause emotional distress to Scott.

On December 11, 2013, defendants sent a letter addressed to plaintiff and her deceased husband, making a formal demand to remove the wall. Defendants claimed that they acted on the advice of counsel, but the trial court found this "incredible" because it was unsupported by testimony from counsel. The court found that the letter was another effort to inflict emotional distress on Scott.

Scott's attorneys wrote to Traynor regarding Scott's retention of a surveyor and asked why, after 20 years, the wall had become unacceptable. Steiner responded with an e-mail referring to Scott as "piggish," "erratic," with a "volcanic temper" and "hermit-like lifestyle." He stated that Scott's deceased husband "would be rolling in his grave (or his ashes)" to know that the Agreement was not being honored. Steiner stated that Scott "needs to do the right thing before she further drags herself down the rabbit hole publicly

3

and personally more than she already has." The trial court wrote that this insulting missive was received by Scott as well as her attorneys, and its only purpose was to cause emotional distress.

Defendants began leaving their trash cans in front of Scott's mailbox, something they had never done in 14 years. This conduct continued for 50 days without interruption, though trash was picked up only once a week. Defendants increased the number of trash cans and left them uncovered. Defendants testified that they did this because they no longer wanted to accommodate Scott and wanted to "'set an example for Scott'" because she was a "'horrible, despicable neighbor.'"

On March 24, 2014, a worker hired by Scott was walking from his car to Scott's home when Traynor yelled at him for talking loudly on his cell phone. The worker yelled back, and testified that defendants then spoke of getting a gun and Steiner threatened to shoot him. Traynor threw a metal object at the worker from defendants' balcony. Though the trial court did not credit the gun threat, the incident "does illustrate the ongoing behavior of Traynor and Steiner to accost employees of Scott for using the road that both parties share rights to." In sum, defendants engaged in "a continuous pattern of harassing conduct toward Scott and her employees that were designed to and did inflict substantial emotional distress on Scott. The behavior served no legitimate purpose other than to inflict such distress."

The court rejected defendants' claim that their misconduct was connected to their desire to enforce contractual rights under the Agreement. Defendants' only motive was to inflict substantial emotional distress, not to enforce their legal rights. The court later clarified that it "intend[ed] to impute behavior of Mr. Steiner and Ms. Traynor to each other because the evidence overwhelmingly showed that they were, at all times, acting together." The court enjoined defendants from harassing or threatening Scott and her children; contacting them in any way; trespassing on Scott's property; or placing objects in front of Scott's mailbox. The court awarded Scott $40,000 in statutory attorney fees as the prevailing party.

4

## DISCUSSION

### 1. Timeliness of the Appeal

The restraining orders are appealable. (Code Civ. Proc., § 904.1, subd. (a)(6); *R.D. v. P.M.*, *supra*, 202 Cal.App.4th at p. 187.) Scott asks that the appeal be dismissed as untimely. "If a notice of appeal is filed late, the reviewing court must dismiss the appeal." (Cal. Rules of Court, rule 8.104(b).) "The time for appealing a judgment is jurisdictional; once the deadline expires, the appellate court has no power to entertain the appeal." (*Van Beurden Ins. Services, Inc. v. Customized Worldwide Weather Ins. Agency, Inc.* (1997) 15 Cal.4th 51, 56.)

The trial court signed the restraining orders on June 11, 2014. It also issued an unsigned memorandum of decision, stating its reasons for granting the restraining orders and signaling its intent to sign those orders. When a decision is followed by a formal order, as occurred here, the signed order is the judgment. (*Alan v. American Honda Motor Co., Inc.* (2007) 40 Cal.4th 894, 901; *In re Cassandra B.* (2004) 125 Cal.App.4th 199, 208 [a restraining order is directly appealable].)

A notice of appeal must be filed within 60 days after (1) the superior court clerk serves a file-stamped copy of the judgment, or (2) a party serves a file-stamped copy of the judgment on the person filing the notice of appeal. Otherwise, the notice must be filed within 180 days after entry of judgment. (Cal. Rules of Court, rule 8.104(a)(1).)

The superior court clerk served the court's memorandum of decision, along with file-stamped copies of the restraining orders, on June 11, 2014. By serving *both* the nonappealable minute order together with the appealable restraining orders in a single envelope, the clerk did not trigger the 60 day period for filing an appeal. (*Alan v. American Honda Motor Co., Inc.*, *supra*, 40 Cal.4th at p. 903.) Litigants need not "glean the required information from multiple documents or [ ] guess, at their peril, whether such documents in combination trigger the duty to file a notice of appeal." (*Id.* at p. 905.) To trigger the 60-day appeal period, the court clerk had to send only the restraining orders, with a notice of entry or a certificate of mailing. That did not happen in this case.

5

As to the second method for triggering the 60-day appeal period, plaintiff arranged for the civil harassment restraining order against Traynor to be personally served on defense counsel on June 12, 2014; proof of personal service was filed with the court on June 13, 2014. (Code Civ. Proc., § 1011, subd. (a) [authorizing personal service on an attorney].) Defense counsel does not contest that he was properly served with the judgment against Traynor. The notice of appeal was filed 62 days later, on Wednesday, August 13, 2014, which is two days too late.

Traynor offers two reasons why she believes that her appeal is timely.

First, she observes that the trial court issued a nunc pro tunc order on June 20, 2014. This corrects "due to inadvertence and clerical error" the memorandum of decision describing the facts underlying the restraining orders.[2] Traynor reasons that the correction is a new judgment, rendering her notice of appeal timely.

It is true that a "substantial modification" *of the judgment* by amendment supersedes the original, and becomes a new appealable judgment. (*Torres v. City of San Diego* (2007) 154 Cal.App.4th 214, 222.) Thus, if the original judgment names one defendant, and an amendment changes the judgment to an entirely different defendant, this substantial modification begins the time for an appeal by the newly named losing party because it is a material change in the outcome. (*CC-California Plaza Associates v. Paller & Goldstein* (1996) 51 Cal.App.4th 1042, 1048-1049.)

Here, the judgment is the restraining order entered on June 11, 2014. The judgment contains no errors, clerical or otherwise, correctly naming the protected persons as Donna Scott and her two children, and the restrained persons as Reed Steiner and Dyan Traynor. The nunc pro tunc correction of the court's unsigned, nonappealable factual synopsis did not result in any change to the judgment. Accordingly, the time to

---

[2]    The decision reads, "Traynor and *Scott* have engaged in a continuous pattern of harassing conduct toward Scott and her employees that [was] designed to and did inflict substantial emotional distress on Scott." (Italics added.) The nunc pro tunc order corrects the italicized word from "Scott" to "Steiner" because Scott obviously did not engage in harassing conduct toward herself.

6

appeal began the day after the court signed the restraining order, when it was personally served on defense counsel. The time to appeal was not affected by clerical changes to the memorandum of decision.

Second, Traynor maintains that the time for an appeal was extended by a motion for reconsideration filed on June 27, 2014, 16 days after the trial court entered judgment, and 15 days after plaintiff personally served the order. The trial court denied the motion because it is procedurally defective and did not raise any new or different facts, circumstances or law.

A motion for reconsideration cannot be pursued after judgment. A court may "reconsider or alter its judgment so long as judgment has not yet been entered. Once judgment has been entered, however, the court may not reconsider it and loses its *unrestricted* power to change the judgment. It may correct judicial error only through certain limited procedures such as motions for new trial and motions to vacate the judgment." (*Passavanti v. Williams* (1990) 225 Cal.App.3d 1602, 1606.) The filing of an invalid postjudgment motion for reconsideration does not extend the time in which to file a notice of appeal from the judgment. (*Ramon v. Aerospace Corp.* (1996) 50 Cal.App.4th 1233, 1236-1237; *Ten Eyck v. Industrial Forklifts Co.* (1989) 216 Cal.App.3d 540, 545.) Traynor's postjudgment motion was not valid.

The losing party's pursuit of "a *valid* motion to reconsider an appealable order under Code of Civil Procedure section 1008" extends the time to appeal. (Cal. Rules of Court, rule 8.108(e), italics added.) A valid motion for reconsideration is one that "'complies with all procedural requirements,'" regardless of its substantive merits. (*Branner v. Regents of University of California* (2009) 175 Cal.App.4th 1043, 1047, italics omitted.) The requirements for a motion for reconsideration are: (1) filing the motion within 10 days after service of written notice of the order and (2) the applicant "shall state by affidavit" the order made and what new or different facts, circumstances or law are shown. (Code Civ. Proc., § 1008, subd. (a).)

Traynor's motion for reconsideration was procedurally defective. Apart from being improperly filed after judgment was entered, it was filed more than 10 days after

7

personal service of the appealable restraining orders, and it has no supporting affidavit. A motion to reconsider is "invalid when filed and served [if it] fail[s] to contain an affidavit or declaration in support of the motion." (*Branner v. Regents of University of California*, *supra*, 175 Cal.App.4th at p. 1048, italics omitted.) As a result, the time to appeal was not extended. (*Id.* at pp. 1049-1050.)

## 2. **Defendants' Harassing Conduct Was Neither Privileged Nor Protected Speech**

Defendants do not contest that their course of conduct, as described by the trial court, amounts to harassment.[3] Instead, defendants maintain that the restraining orders are based on emotional distress "arising from privileged communications between the parties that related to a legal dispute." "A privileged publication or broadcast is one made . . . [i]n any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) or in the initiation or course of any other proceeding authorized by law." (Civ. Code, § 47, subd. (b).)

The litigation privilege guarantees access to the judicial process by litigants, witnesses and attorneys, while allowing them to avoid subsequent derivative tort actions. (*Olszewski v. Scripps Health* (2003) 30 Cal.4th 798, 830; *Flatley v. Mauro* (2006) 39 Cal.4th 299, 324.) A prelitigation communication is privileged only if it actually relates to litigation contemplated in good faith, i.e., it must be "'in furtherance of the objects of the litigation'" and "'connected with, or have some logical relation to, the action [and] not be extraneous to the action.'" (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1251; *Silberg v. Anderson* (1990) 50 Cal.3d 205, 219-220.) Critically, the privilege "'"applies only to communicative acts and does not privilege

---

[3] A "course of conduct" is a pattern evidencing a continuity of purpose, including stalking, making harassing telephone calls, or sending harassing correspondence; "harassment" is a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys or harasses the person, serves no legitimate purpose, and would cause a reasonable person to suffer substantial emotional distress and actually did cause substantial distress to the petitioner. (§ 527.6, subd. (b).) The trial court imputed Traynor's conduct to Steiner, and vice versa.

8

tortious courses of conduct."'"" (*Olszewski*, at p. 830; *Action Apartment Assn.*, at p. 1249.)

The tortious course of conduct detailed by the trial court was not logically related to contemplated litigation, or in furtherance of the objects of litigation. Defendants' acts were entirely extraneous to any litigation: trespassing in Scott's yard; barricading Scott's dogs inside of her house; accosting and yelling at Scott's employees; making a scene at the office of Scott's deceased husband to humiliate Scott; leaving a voicemail with greetings to Scott's deceased husband on Scott's wedding anniversary; sending a letter to Scott demanding that she and the decedent remove the wall, even though Scott was already represented by counsel who had instructed defendants not to contact Scott; and leaving numerous uncovered trash cans in front of Scott's mailbox for 50 straight days. These acts of misconduct did not serve to enforce defendants' ability under the Agreement to seek removal of the mailbox wall. Defendants admitted at trial that they were cruel to Scott because they did not like her.

Apart from lacking any actual or logical connection to a judicial proceeding, defendants' statements were admissible to show their intent to harm Scott personally, not just enforce the Agreement. "'The privileges of Civil Code section 47 . . . operate as limitations upon liability'" and the statute "has never been thought to bar the *evidentiary* use of every 'statement or publication' made in the course of a judicial proceeding . . . . Thus, while section 47(2) bars certain tort causes of action which are predicated on a judicial statement or publication itself, the section does not create an evidentiary privilege for such statements. Accordingly, when allegations of misconduct properly put an individual's intent at issue in a civil action, statements made during the course of a judicial proceeding may be used for evidentiary purposes in determining whether the individual acted with the requisite intent." (*Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.* (1986) 42 Cal.3d 1157, 1168; *Flatley v. Mauro*, *supra*, 39 Cal.4th at p. 325.)

Unsurprisingly, defendants cite no cases in which a party was afforded the protection of the statutory privilege after engaging in a course of conduct designed to

9

harass and inflict emotional distress on another person. Section 527.6 instructs courts to enjoin unlawful harassment to protect an individual's constitutional right to safety, happiness and privacy. (*Russell v. Douvan* (2003) 112 Cal.App.4th 399, 403.) Applying the litigation privilege to *concededly* harassing conduct would vitiate section 527.6 and render its constitutional protections meaningless.

The litigation privilege has been limited when it creates an irreconcilable conflict with other, coequal state laws. The privilege does not apply when a statute "is more specific than the litigation privilege and would be significantly or wholly inoperable if its enforcement were barred when in conflict with the privilege." (*Action Apartment Assn., Inc. v. City of Santa Monica*, *supra*, 41 Cal.4th at p. 1246 [privilege does not apply to perjury, subornation of perjury, false report of a criminal offense, or improper attorney solicitations].) The litigation privilege does not apply at all to harassing debt collection practices forbidden by the Rosenthal Fair Debt Collection Practices Act (Civ. Code, § 1788 et seq.) because applying the privilege would effectively immunize the abusive conduct that the Rosenthal Act prohibits. (*Komarova v. National Credit Acceptance, Inc.* (2009) 175 Cal.App.4th 324, 337-340.) In this instance, applying the litigation privilege to uncontestedly harassing misconduct would immunize defendants from the antiharassment provisions in section 527.6.

The cases cited by defendants relating to aggressive attorney demand letters are inapposite here: neither defendants' communications nor their immature and vicious conduct had anything to do with exercising a contractual right to demand the removal of the mailbox wall. Even an attorney's demand letter is actionable if it contains scurrilous material directed at an individual that is unrelated to any legal dispute between the parties. (*Nguyen v. Proton Technology Corp.* (1999) 69 Cal.App.4th 140, 150-151.)

Scott's petition did not violate defendants' constitutional right to freedom of speech. (See § 527.6, subd. (b)(1) [excluding constitutionally protected activity].) The First Amendment does not prohibit courts from incidentally enjoining speech to protect individuals' constitutional right to pursue the safety, happiness and privacy assured by the antiharassment statute where, as here, the restraining orders are content neutral and

10

are no broader or more restrictive than is necessary to prevent continued harassment. (*R.D. v. P.M.*, *supra*, 202 Cal.App.4th at pp. 191-193.) "In California, speech that constitutes 'harassment' within the meaning of section 527.6 is not constitutionally protected, and the victim of the harassment may obtain injunctive relief." (*Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2005) 129 Cal.App.4th 1228, 1250.) Antagonistic acts, deliberate infliction of emotional distress, intrusion and trespass onto someone's property is not "speech." (*Novartis Vaccines & Diagnostics, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2006) 143 Cal.App.4th 1284, 1296. See also *Brekke v. Wills* (2005) 125 Cal.App.4th 1400, 1409 [harassing private speech does not implicate the First Amendment, which protects matters of public concern] and *DVD Copy Control Assn., Inc. v. Bunner* (2003) 31 Cal.4th 864, 881 [there is no impediment to restraining speech to protect the constitutional rights of others].)

**3. Attorney Fees on Appeal**

"The prevailing party in any action brought under [the antiharassment statute] may be awarded court costs and attorney's fees, if any." (§ 527.6, subd. (r).) As the prevailing party in this appeal, Scott is entitled to recover her attorney fees and costs on appeal from defendants, in an amount to be determined by the trial court upon application by Donna Scott. (*Byers v. Cathcart* (1997) 57 Cal.App.4th 805, 812-813.)

## DISPOSITION

As to defendant Dyan Traynor, the appeal is dismissed for lack of jurisdiction stemming from an untimely notice of appeal. As to defendant Reed Steiner, the judgment is affirmed. Donna Scott is entitled to recover her costs on appeal from both defendants.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


BOREN, P.J.

We concur:


CHAVEZ, J.          HOFFSTADT, J.


11